# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civ. Action No. 4:24-cv-00558-O |
| MATTHEW BROWN and MATTHEW BROWN COMPANIES, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE PLAINTIFF'S COMPLAINT WITH PREJUDICE</u>

Dated:  September 5, 2024          Respectfully submitted,


/s/ Patrick Disbennett_____
Patrick Disbennett
Texas Bar No. 24094629
United States Securities and Exchange Commission
Fort Worth Regional Office
Burnett Plaza, Suite 1900
801 Cherry Street, Unit 18
Fort Worth, TX  76102
Telephone: (817) 266-9633 (Disbennett)
Facsimile: (817) 978-4927
disbennettpa@sec.gov

*ATTORNEY FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii-v

I.     SUMMARY ................................................................................................................1

II.    LEGAL STANDARD................................................................................................3

III.   ARGUMENTS & AUTHORITIES ..........................................................................4

      A.  The Complaint Adequately Pleads a Claim Against Defendants Under Section 10(b) of the Exchange Act and Rule 10b-5 ......................................................................................4

          i.  The Complaint pleads the "who, what, when, where, and how" of Defendants' securities fraud in accordance with Rule 9(b)........................................................5

          ii.  The Complaint plausibly alleges Defendants made materially false and misleading statements with scienter ........................................................................................7

          iii.  SEC enforcement actions are not subject to the PSLRA or other elements applicable only in private securities litigation................................................................10

      B.  Defendants' Reliance on the Term Sheet, NDA, and Other Alleged "Facts" and Documents That Are Not in the Complaint is Improper and Unavailing ......................11

      C.  Defendants' Accusations of "Misconduct and Obstruction by the SEC" Are Unfounded................................................................................................................13

      D.  Alternative Request for Leave to Amend the Complaint................................................14

IV.   CONCLUSION......................................................................................................15

# TABLE OF AUTHORITIES

**Federal Cases**

*ABC Arbitrage Pls. Grp. v. Tchuruk,*
   291 F.3d 336 (5th Cir. 2002) ................................................................. 8

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ............................................................................ 3

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ............................................................................ 3

*Benchmark Elecs., Inc. v. J.M. Huber Corp.,*
   343 F.3d 719 (5th Cir. 2003) ........................................................... 4, 5, 6, 7

*Causey v. Sewell Cadillac-Chevrolet, Inc.,*
   394 F.3d 285 (5th Cir. 2004) ............................................................... 12

*Foman v. Davis,*
   371 U.S. 178 (1962) ........................................................................... 14

*Herrmann Holdings Ltd. v. Lucent Tech. Inc.,*
   302 F.3d 552 (5th Cir. 2002) ................................................................ 9

*Kuehnert v. Texstar Corp.,*
   412 F.2d 700 (5th Cir. 1969) ............................................................... 11

*Landry v. Air Line Pilots Ass'n Int'l AFL–CIO,*
   892 F.2d 1238 (5th Cir. 1990) ............................................................... 4

*Lormand v. US Unwired, Inc.,*
   565 F.3d 228 (5th Cir. 2009) ................................................................ 3

*Lovick v. Ritemoney Ltd.,*
   378 F.3d 433 (5th Cir. 2004) ................................................................ 3

*Oliver Sch., Inc. v. Foley,*
   930 F.2d 248 (2d Cir. 1991) ............................................................... 14

*Oran v. Stafford,*
   226 F.3d 275 (3d Cir. 2000) ................................................................ 8

*Scanlan v. Texas A&M Univ.,*
   343 F.3d 533 (5th Cir. 2003) ........................................................... 12, 13

*SEC v. Blatt,*
   583 F.2d 1325 (5th Cir. 1978) ............................................................. 11

*SEC v. Couch, No. 3:14-CV-1747-D,*
   2014 WL 7404127 (N.D. Tex. Dec. 31, 2014) ....................................... 2, 3, 4, 10

*SEC v. Felton, No. 3:20-CV-0822-G,*
     2021 WL 2376722 (N.D. Tex. June 10, 2021) ....................................................... 9

*SEC v. Gann, No. 3:05-CV-0063-L,*
     2008 WL 857633 (N.D. Tex. Mar. 31, 2008) ...................................................... 10

*SEC v. Kornman,*
     391 F.Supp.2d 477 (N.D. Tex. 2005) ................................................................. 10

*SEC v. Narayan, No. 3:16-CV-1417-M,*
     2017 WL 4652063 (N.D. Tex. Aug. 28, 2017) .................................................... 10

*SEC v. Reynolds, No. CIV.A.3-08-CV-0384-B,*
     2008 WL 3850550 (N.D. Tex. Aug. 19, 2008) .................................................... 10

*SEC v. Seghers,*
     298 Fed. App'x 319 (5th Cir. 2008) .................................................................... 8

*SEC v. Sethi,*
     910 F.3d 198 (5th Cir. 2018) ...................................................................... 8, 9, 10

*SEC v. Verges, No. 3:23-CV-2146-D,*
     2024 WL 531260 (N.D. Tex. Feb. 9, 2024) ....................................................... 4, 7

*Steiner v. Southmark Corp.,*
     734 F. Supp. 269 (N.D.Tex.1990) ........................................................................ 4

*Tuchman v. DSC Commc'ns Corp.,*
     14 F.3d 1061 (5th Cir.1994) ................................................................................. 3

*U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.,*
     336 F.3d 375 (5th Cir. 2003) .............................................................................. 12

*Williams v. WMX Techs.,*
     112 F.3d 175 (5th Cir. 1997) ................................................................................ 4

iv

**Federal Statutes**

**Securities Exchange Act of 1934**

Section 10
    [15 U.S.C. § 78j] ................................................................................................. 4

Section 10(b)
    [15 U.S.C. § 78j(b)] .......................................................................................2, 4 11

**Securities Exchange Act of 1934 Rules**

Rule 10b-5
    [17 C.F.R. § 240.10b-5] .................................................................................2, 4

Rule 10b-5(a)
    [17 C.F.R. § 240.10b-5(a)].............................................................................4, 8

Rule 10b-5(c)
    [17 C.F.R. § 240.10b-5(c)].............................................................................4, 8

**Federal Rules of Civil Procedure**

FED. R. CIV. P. 8 ...........................................................................................4

FED. R. CIV. P. 9(b) ............................................................................ 2, 3, 4, 5, 7

FED. R. CIV. P. 12(b)(6) ...............................................................................3, 14

FED. R. CIV. P. 15 ..................................................................................... 14

The Securities and Exchange Commission ("**SEC**") files this response in opposition to the Motion to Dismiss [Dkt. No. 11] ("**Motion**") filed by Matthew Brown ("**Brown**") and Matthew Brown Companies, LLC ("**Matthew Brown Companies**") (together, "**Defendants**"). For the following reasons, the SEC respectfully requests that the Court deny Defendants' Motion.

## I.     SUMMARY

The Complaint [Dkt. No. 1] alleges that, in March 2023, Defendants engaged in a fraudulent scheme to submit and publicly tout a bogus offer to purchase $200 million of stock from Virgin Orbit Holdings, Inc. ("**Virgin Orbit**"). Compl. ¶¶ 1-7. Defendants' Motion never challenges key facts underpinning the scheme—that Brown sent Virgin Orbit a fake screenshot of his company's bank account purporting to show the account had over $182 million in funds that it did not actually have and that he lied to Virgin Orbit about his investment experience.

The Complaint alleges, among other things, that Brown made false and misleading statements and omissions to Virgin Orbit executives about his purported investing experience and available capital to fund the $200 million offer, which he made to Virgin Orbit at a time when it was teetering on the verge of bankruptcy. *Id.* ¶ 2. As mentioned, Brown sent Virgin Orbit a fake screenshot of his company's bank account purporting to show a balance of over $182 million, when in fact, the account held less than $1 at the time. *Id.* Brown also appeared on CNBC, where he made false and misleading statements to the investing public about Defendants' purported investment experience and the bogus $200 million offer. *Id.* ¶ 4.

Brown tried to profit from the bogus offer by proposing a "break-up" fee to Virgin Orbit, but Virgin Orbit refused to agree to any such fee. *Id.* ¶ 5. Thereafter, Brown failed to respond to Virgin Orbit's basic due diligence inquiries and never funded the bogus offer. *Id.* ¶ 6. Virgin Orbit's stock price—which rose approximately 33.1% when news of Brown's bogus offer initially leaked—dropped after the market learned that the offer collapsed. *Id.* ¶¶ 3, 6.

1

On June 17, 2024, the SEC filed the Complaint against Brown and his company, Matthew Brown Companies, alleging that Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("**Exchange Act**") and Rule 10b-5 thereunder. *Id.* ¶ 7.

Defendants, proceeding *pro se*, now move to dismiss the Complaint. Because most of the Motion is laced with unsubstantiated allegations that are not in the Complaint and cannot be considered at the pleadings stage, the SEC will address the Motion in three parts, as follows.

First, the Motion initially asserts procedurally proper—albeit vague and unavailing—arguments for a motion to dismiss. Mot. at 1-4. However, Defendants' vague argument that the Complaint fails to comply with Federal Rule of Civil Procedure 9(b) completely ignores the Complaint's allegations laying out the "who, what, when, where, and how" of Defendants' securities fraud in painstaking detail. Defendants also ignore the factual allegations throughout the Complaint that plausibly state the elements of the SEC's claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Further, Defendants' contentions that the Complaint fails to allege loss causation and other pleading requirements of the Public Securities and Litigation Reform Act ("**PSLRA**") fail as a matter of law, because SEC enforcement actions are not subject to the PSLRA or such other elements only applicable in private securities litigation. *See SEC v. Couch*, No. 3:14-CV-1747-D, 2014 WL 7404127, at *3, *7 (N.D. Tex. Dec. 31, 2014) (Fitzwater, J.) ("the heightened pleading requirements of the [PSLRA]…are inapplicable" in an "SEC civil enforcement action," and "the SEC, unlike private litigants, need not prove the elements of reliance, proximate causation, or harm" for a securities fraud claim).

Second, the Motion next purports to tell Defendants' unsubstantiated version of events regarding a term sheet and non-disclosure agreement ("**NDA**") referenced in the Complaint. Mot.

at 4-7. But Defendants cannot rely on allegations outside the Complaint at this stage, and in any event, such allegations do not undermine or defeat the SEC's claim.

Third, Defendants spend the remainder of the Motion accusing the SEC of treating them unfairly in investigating and bringing this enforcement action. Mot. at 7-19. Defendants' accusations are unfounded, illogical, and improper argument for a motion to dismiss.

## II.    LEGAL STANDARD

Motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, the SEC must plead enough facts "to state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must construe the Complaint in the light most favorable to the SEC, accept as true all well-pleaded factual allegations, and draw all reasonable inferences in its favor. *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable," and a recovery is unlikely and remote. *Twombly*, 550 U.S. at 556.

Rule 9(b) of the Federal Rules of Civil Procedure requires that the SEC plead "with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

To satisfy Rule 9(b), "a complaint alleging fraud must specify the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Couch*, 2014 WL 7404127, at *3 (quotation marks and brackets omitted) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir.1994)).

"Put simply, Rule 9(b) requires 'the who, what, when, where and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Williams v. WMX Techs.*, 112 F.3d 175, 179 (5th Cir. 1997)).

"Rule 9(b) is not intended, however, 'to procure punctilious pleading detail.'" *Couch*, 2014 WL 7404127, at *4 (quoting *Steiner v. Southmark Corp.*, 734 F. Supp. 269, 273 (N.D.Tex.1990)). Rather, "Rule 9(b) must be read in conjunction with [Rule] 8 which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (citing *Steiner*, 734 F.Supp. at 273; *Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 892 F.2d 1238, 1264 (5th Cir. 1990)).

## III.    ARGUMENT AND AUTHORITIES

### A.  The Complaint Adequately Pleads a Claim Against Defendants Under Section 10(b) of the Exchange Act and Rule 10b-5.

The Complaint alleges a single claim against Defendants for violating Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. Compl. ¶¶ 37–40. Section 10(b) and Rule 10b-5 make it unlawful for any person, directly or indirectly, in connection with the purchase or sale of any security, to (a) employ any device, scheme, or artifice to defraud; (b) make any untrue statement of a material fact or omit to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. *See SEC v. Verges*, No. 3:23-CV-2146-D, 2024 WL 531260, at *4 (N.D. Tex. Feb. 9, 2024) (Fitzwater, J.) (citing 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5(a)-(c)) (quotations omitted).

As demonstrated below, the SEC pleads Defendants' securities fraud with particularity and plausibly alleges the essential elements of its claim against Defendants for their violations of Section 10(b) and Rule 10b-5.

> **i.    The Complaint pleads the "who, what, when, where, and how" of Defendants' securities fraud in accordance with Rule 9(b).**

Defendants' Motion first argues that the SEC's claim should be dismissed because the Complaint "fails to meet the particularity requirements" under Rule 9(b). Mot. at 1-4. As discussed, "Rule 9(b) requires 'the who, what, when, where and how' to be laid out" with respect to a fraud claim. *Benchmark Elecs.*, 343 F.3d at 724 (citation omitted). The Complaint easily satisfies this standard as to Defendants' securities fraud in this case.

The Complaint alleges with particularity: (1) **who** engaged in the fraudulent scheme and made the operative misstatements and omissions—namely, Brown, individually and/or on behalf of his entity, Matthew Brown Companies; (2) **when** Defendants engaged in the fraudulent scheme and made the false or misleading statements and omissions—on specified dates between March 19, 2023 and March 24, 2023; and (3) **where** Defendants engaged in the fraud or made the false and misleading statements and omissions—via LinkedIn messages, emails, and text messages with Virgin Orbit executives, via a fabricated screenshot of Matthew Brown Companies' purported bank account, and via Brown's interview on CNBC. Compl. ¶¶ 19, 21, 23-25, 29-30, 33-35.

The Complaint further alleges (4) **what** fraudulent scheme Defendants engaged in— namely, a scheme to submit and publicly tout a bogus offer to purchase $200 million of stock from Virgin Orbit. *Id.* ¶ 1. It also alleges **what** deceptive acts Defendants engaged in to further their fraudulent scheme and **what** misrepresentations and omissions Defendants made to Virgin Orbit and the investing public. Among others, these include:

- Sending unsolicited messages to Virgin Orbit executives purporting to make a bogus offer to purchase Virgin Orbit's securities while the company was seeking funding to avoid bankruptcy;

- Sending Virgin Orbit a fabricated screenshot of Matthew Brown Companies' purported bank account in connection with that offer that falsely represented that the account had over $182 million, when in fact, the account has less than $1;

- Appearing on CNBC (despite signing an NDA with Virgin Orbit) and making misrepresentations and omissions to investors in Virgin Orbit's publicly-traded securities about the bogus $200 million offer and about Defendants' background, space industry and investing experience, and capital available to fund the bogus offer; and

- Attempting to secure a "break-up" fee from Virgin Orbit that would be paid to Defendants when they inevitably failed to fund the bogus offer.

*Id.* ¶¶ 19, 21, 23-25, 29-30, 33-35.

Lastly, the Complaint alleges (5) ***how*** Defendants' acts in furtherance of the scheme were deceptive, and ***how*** their representations and omissions were false and misleading. For example, the Complaint explains how Brown's unsolicited message via LinkedIn to Virgin Orbit's CEO on March 19, 2023 was deceptive, false, and misleading, as follows:

> Brown had never invested "over $750mm" of his personal capital, he had never held any personal investments or positions in any space companies, and he did not have the bandwidth to invest $200 million of his own capital or from any other known source of capital accessible to him at the time. In fact, at or around the time of his statements to Virgin Orbit's CEO, Brown was self-employed and, as he later admitted under oath, his net worth was "negative"—none of which he disclosed to Virgin Orbit in this message or in subsequent communications with Virgin Orbit. Also, by representing that his earlier investments were "largely in stealth mode," Brown created the false and misleading impression that his alleged investment history was hidden from public view, when, in fact, no such investment history existed.

*Id.* ¶ 20.

As another example, the Complaint explains how Brown acted deceptively in sending Virgin Orbit a screenshot purporting to show Matthew Brown Companies' bank account had a

balance of over $182 million, when in fact, "[t]he screenshot…was fabricated" and "the actual balance of the Matthew Brown Companies' bank account that Brown identified to support his offer was less than $1, which Defendants never disclosed to Virgin Orbit." *Id.* ¶¶ 21-22; *see also id.* ¶ 23 (explaining how Brown's misstatements and deceptive acts enabled him "to engage Virgin Orbit in negotiations over his bogus offer"); *id.* ¶ 24 (explaining how Brown's representation that he had a law degree from Southern Methodist University was false and misleading, because "Brown had never graduated from college, let alone attended law school"); *id.* ¶¶ 29, 31 (explaining how Brown deceptively appeared on CNBC to falsely promote himself and his bogus offer, "[d]espite having executed an NDA with Virgin Orbit only days earlier"); *id.* ¶¶ 34-35 (explaining how Brown deceptively sought to profit from his fraud by trying to get Virgin Orbit to agree to a "break-up" fee); *id.* ¶¶ 27, 36 (explaining how Brown's bogus offer initially led Virgin Orbit's stock price to increase by over 30%, only for that price to later drop when the market learned that Brown's purported offer had collapsed).

Because the Complaint pleads the "who, what, when, where, and how" of Defendants' securities fraud, it satisfies Rule 9(b). *See, e.g.*, *Verges*, 2024 WL 531260, at *10 (concluding that the SEC's "complaint satisfies Rule 9(b) because it contains the 'who, what, where, when, and how' allegations generally required in securities fraud cases").

> ## ii.   *The Complaint plausibly alleges Defendants made materially false and misleading statements with scienter.*

The Motion also appears to challenge the plausibility of the Complaint's allegations concerning the elements of false and misleading statements and omissions, materiality, and scienter. *See* Mot. 1-4 (arguing that the Complaint does not adequately allege "scienter" or "material misrepresentations or omissions"). But as shown below, the Complaint plausibly alleges each of these elements.

First, as described above in Section III(A)(i) of this response, the Complaint details each of Defendants' statements and omissions underlying the securities fraud claim against Defendants and explains—both plausibly and with particularity—how each statement and omission was false or misleading.

Second, the Complaint plausibly alleges materiality. "'[A] statement or omitted fact is 'material' if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest.'" *SEC v. Seghers*, 298 Fed. App'x 319, 328 (5th Cir. 2008) (quoting *ABC Arbitrage Pls. Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002)).

Here, a reasonable investor evaluating Virgin Orbit's publicly-traded stock would undoubtedly consider Brown's misstatements and omissions about Defendants' purported investment history, ability to fund the $200 million offer, and the legitimacy of the bogus offer important in making a decision to invest in a company facing financial difficulties. Indeed, as alleged, Virgin Orbit's stock price increased substantially when news of the bogus offer leaked and then dropped when the offer collapsed. *Id.* ¶¶ 27, 28, 36; *see also ABC Arbitrage*, 291 F.3d at 361 ("[T]he materiality of disclosed information may be measured post hoc by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock.") (quoting *Oran v. Stafford*, 226 F.3d 275, 282 (3d Cir. 2000)); *SEC v. Sethi*, 910 F.3d 198, 206 (5th Cir. 2018) (finding that defendant made material misrepresentations when he "misstated his relationships with major oil companies…and, as a result, misled investors"). Likewise, Virgin Orbit would reasonably consider Defendants' misrepresentations and omissions on these topics material in connection with Defendants' offer to purchase $200 million of its stock.[1]

---

[1] The Motion does not mention or challenge the Complaint's scheme liability allegations under Rule 10b-5(a) and (c). Even so, Defendants' deceptive acts in furtherance of their fraudulent scheme were unquestionably material. Indeed, the Complaint alleges Virgin Orbit only moved forward in discussions with Brown after he sent the fake screenshot purporting to show that Matthew Brown Companies' bank account had over $182 million available. Compl. ¶¶ 21-23.

Third, the Complaint plausibly alleges scienter. The Complaint's factual allegations "are sufficient to support [] an inference [of scienter] if they either (1) show a defendant's motive to commit securities fraud or (2) identify circumstances that indicate conscious behavior on the part of the defendant." *SEC v. Felton*, No. 3:20-CV-0822-G, 2021 WL 2376722, at *7 (N.D. Tex. June 10, 2021) (quoting *Herrmann Holdings Ltd. v. Lucent Tech. Inc.*, 302 F.3d 552, 565 (5th Cir. 2002)).

Here, the Complaint plausibly alleges scienter through Defendants' motive to commit securities fraud. Specifically, the Complaint alleges that Defendants were motivated by: (a) the publicity they received from CNBC and news articles that falsely portrayed Brown as a wealthy investor with significant experience in the space industry, and (b) the lucrative "break-up" fee Brown attempted to extract from Virgin Orbit before the bogus offer inevitably collapsed. Compl. ¶¶ 26, 29-30, 33-35.

The Complaint also alleges facts from which the Court can reasonably infer that Brown engaged in the fraud consciously or, at a minimum, with severe recklessness.[2] For example, when Brown sent the fabricated screenshot of his company's bank account falsely showing that the account had over $182 million, Brown was acting consciously and intentionally. Moreover, the timing of Brown's bogus offer (after Virgin Orbit announced it was ceasing operations to explore funding options in hopes of avoiding bankruptcy), Brown's efforts to conceal his true investment history (or lack thereof) by telling Virgin Orbit that his earlier investments were "largely in stealth mode," the egregiousness of his false and misleading statements to Virgin Orbit and retail

---

[2] "[T]he standard for fraudulent intent through circumstantial evidence indicating conscious behavior is 'severe recklessness.'" *Felton*, 2021 WL 2376722, at *7. "[S]evere recklessness" is "those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it." *Sethi*, 910 F.3d at 206.

investors, his self-promotional appearance on CNBC, and his efforts to secure a "break-up" fee from Virgin Orbit further support the inference that Defendants acted with scienter in this case. Compl. ¶¶ 19-35; *see, e.g.*, *SEC v. Reynolds*, No. CIV.A.3-08-CV-0384-B, 2008 WL 3850550, at *7 (N.D. Tex. Aug. 19, 2008) (Boyle, J.) (finding scienter adequately alleged based on, among other things, the "timing" of the defendants' transactions and their extensive promotional campaign); *Sethi*, 910 F.3d at 207–08 (finding facts established scienter where defendant falsely "tout[ed] his relationships with major oil companies" that did not exist, thus creating "a 'danger of misleading buyers' into believing that his venture would be well-managed and their investments would be in the hands of the most successful drillers in the world").

### iii. SEC enforcement actions are not subject to the PSLRA or other elements applicable only in private securities litigation.

The Motion also attacks the Complaint for supposedly not complying with "the heightened pleading standards set by the PSLRA" and not alleging that Defendants' fraud "directly caused" losses to investors or that Defendants received a "financial benefit" or "ill-gotten gains." Mot. at 1-4. However, it is well established that "[t]he PSLRA only applies to private securities fraud actions, and not to SEC enforcement actions." *SEC v. Narayan*, No. 3:16-CV-1417-M, 2017 WL 4652063, at *11 n. 10 (N.D. Tex. Aug. 28, 2017) (Lynn, C.J.); *SEC v. Kornman*, 391 F.Supp.2d 477, 494 (N.D. Tex. 2005) (Lindsay, J.) ("Defendant is erroneously relying on the heightened pleading standards from private securities litigation under the [PSLRA]. These standards only apply in private actions, and not SEC enforcement actions." (citing cases)).

Also, "the SEC, unlike private litigants, need not prove the elements of reliance, proximate causation, or harm." *Couch*, 2014 WL 7404127, at *7 (citing *SEC v. Gann*, No. 3:05-CV-0063-L, 2008 WL 857633, at *9 (N.D. Tex. Mar. 31, 2008)).

10

To be sure, Defendants' failure to profit from their fraudulent scheme impacts the scope of monetary remedies that the SEC may seek and obtain against them. *See, e.g.*, *SEC v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) ("The court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing.").[3] But as the Fifth Circuit has observed:

> [W]e are not convinced of any difference in substance between a successful fraud and an attempt. The statutory phrase 'any manipulative or deceptive device,' [] seems broad enough to encompass conduct irrespective of its outcome. The [SEC] may act…under [section] 10(b) [of the Exchange Act], involved here, to enjoin a potential fraud or prosecute a fraud that failed, without proof of actual loss to any victim.

*Kuehnert v. Texstar Corp.*, 412 F.2d 700, 704 (5th Cir. 1969). Thus, Defendants cannot escape liability, simply because they were unsuccessful in their attempts to profit from their securities fraud.

**B. Defendants' Reliance on the Term Sheet, NDA, and Other Alleged "Facts" and Documents That Are Not in the Complaint is Improper and Unavailing.**

Defendants next argue that the Complaint should be dismissed, because the SEC supposedly omitted certain facts from the Complaint and relied on a "non-binding" term sheet. Mot. at 4-7. In support, Defendants purport to cite an "iMessage" and alleged communications they had with Virgin Orbit, none of which are attached to their Motion or cited in the Complaint. *Id.* at 5-6. Defendants also assert self-serving facts not in the Complaint—such as Brown's claim that he apparently thought his CNBC interview was just a "dress rehearsal," which even if true does not excuse his blatant lies during the interview—that supposedly show "Defendants acted appropriately and in compliance with proper conduct." *Id.*

---

[3] In fact, the SEC does not seek disgorgement against Defendants. Compl. ¶ 41.

However, these arguments should be rejected, because Defendants rely on alleged "facts" and evidence not contained in the Complaint. "In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings," with certain limited exceptions. *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). And none of these limited exceptions apply. For example, courts may consider "matters of which judicial notice may be taken," but none of Defendants' self-serving assertions are subject to judicial notice. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). Courts may also consider "[d]ocuments that a defendant attaches to a motion to dismiss…if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). The self-serving facts that Defendants cite in the Motion clearly do not meet this exception. Nor do the "omitted iMessage" or other alleged communications that the Motion purports to cite, which are neither attached to the Motion nor referenced in the Complaint.

Indeed, the Motion repeatedly refers to unattached purported documents, communications, and allegations outside the Complaint that supposedly rebut the Complaint's well-pled allegations. *See, e.g.*, *id.* at 8 (alleging purported discussions between Brown and SEC staff that, according to the Motion, are "omitted" from the Complaint); *id.* at 9 (complaining that the Complaint fails to mention Brown's unsubstantiated excuse for lying about having a law degree—that it was supposedly a "running joke" based on "the tens of millions spent on legal counsel throughout his career"); *id.* at 10 (purporting to explain why the SEC's use of Brown's own testimony in the Complaint—in which he admitted his net worth was "negative"—is "misleading"); *id.* at 11 (discussing a purported text message that supposedly "undermine[s]" allegations in the Complaint). As a matter of law, these arguments concern matters outside of the Complaint and should be summarily rejected at this stage. *Scanlan*, 343 F.3d at 536.

12

Brown also points to the term sheet and NDA, which are referenced in the Complaint but not attached to the Motion or "central" to the SEC's claim. Nonetheless, even if the NDA and term sheet were appropriate to consider, Defendants' arguments concerning these documents are unavailing. Whether Brown breached his NDA in appearing on CNBC has no impact on the Complaint's well-pled allegations that Brown lied in his interview and engaged in other fraudulent conduct and statements both during and outside of that interview. Likewise, whether the term sheet provided by Virgin Orbit was binding is irrelevant. The relevance of the term sheet is that Virgin Orbit provided it to Defendants as a result of Defendants' fraudulent conduct and statements. *See, e.g.* Compl. ¶ 23 ("By falsely portraying his experience and available funding, Brown was able to engage Virgin Orbit in negotiations over his bogus offer."). Whether the term sheet was binding has no bearing on the Complaint's well-pled fraud allegations. For example, it does not change the fact that Brown sent Virgin Orbit a fabricated screenshot purporting to show his company's bank account had over $182 million, when in fact the account had less than $1. *Id.* ¶¶ 21-22.  Nor does it excuse the false statements he made during the CNBC interview about the bogus $200 million offer and his investments "in over 13 space companies" that he did not actually have. *Id.* ¶¶ 29-31.

### C. Defendants' Accusations of "Misconduct and Obstruction by the SEC" Are Unfounded.

In the final ten-plus pages of the Motion, Defendants accuse the SEC of unfounded "procedural misconduct and obstruction" in the investigation preceding the filing of the Complaint, and more broadly, of a supposed "pattern of overreach and misuse of authority." Mot. at 7-19. Defendants' accusations rely entirely on self-serving and unsupported accusations. As a matter of law, these accusations concern matters outside of the Complaint and should be summarily rejected. *See Scanlan*, 343 F.3d at 536.

13

The accusations are also vague, unsubstantiated, and difficult to follow as presented.[4] Nonetheless, the SEC briefly responds that Defendants' accusation that "not a single document has been produced by the Defendants due to the SEC's misconduct" is false and makes no sense. Mot. at 8. The SEC's investigative staff made repeated requests to Brown for documents and offered to work with him on the manner of production, but Brown ultimately (and repeatedly) failed to produce the requested documents. In any event, and to be clear, the SEC has never refused any documents produced or tendered by Defendants.[5]

### D.  Alternative Request for Leave to Amend the Complaint.

Out of an extreme abundance of caution, should the Court conclude that the SEC has insufficiently pleaded any facts or claim for relief challenged by the Motion, the SEC expressly and respectfully requests leave to amend the Complaint. Rule 15 of the Federal Rules of Civil Procedure gives trial courts discretion to permit a party to amend its complaint before trial, and directs courts to "freely give leave when justice so requires." FED. R. CIV. P. 15. Courts liberally grant leave to amend pleadings when Rule 12(b)(6) dismissal is at stake. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Oliver Sch., Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991).

---

[4] As an example, Brown complains about a member of the SEC staff sharing on his LinkedIn an article published in Bloomberg after the Complaint was filed. Mot. at 17. But Brown does not and cannot explain why a member of the SEC staff would be precluded from providing a link to a publicly available news article. In any event, Brown doesn't show how these allegations support his accusations of "abuse" or "misconduct" by the SEC.

[5] The SEC staff attorney investigating this matter also did not obtain testimony from a witness who is a close friend or family member. Mot. at 14. The staff attorney received unsolicited information at a social gathering of family and friends about a transaction not alleged in the Complaint that ultimately led the staff to a different witness who provided information about other conduct by Brown.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, the SEC respectfully requests that the Court deny the Motion. In the alternative, should the Court grant the Motion in any respect, the SEC respectfully requests that the Court grant the SEC leave to amend the Complaint.

Dated:  September 5, 2024                Respectfully submitted,


                                        */s/ Patrick Disbennett*_____
                                        Patrick Disbennett
                                        Texas Bar No. 24094629
                                        United States Securities and Exchange Commission
                                        Fort Worth Regional Office
                                        Burnett Plaza, Suite 1900
                                        801 Cherry Street, Unit 18
                                        Fort Worth, TX  76102
                                        Telephone: (817) 266-9633 (Disbennett)
                                        Facsimile: (817) 978-4927
                                        disbennettpa@sec.gov

                                        *ATTORNEY FOR PLAINTIFF SECURITIES AND EXCHANGE COMMISSION*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2024, the foregoing document was filed electronically via the Court's CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants. I further certify that a true and correct copy of the foregoing document and the notice of electronic filing were served via electronic mail on all parties as follows:

Matthew Brown *(mbrown.kapolei@yahoo.com)*
Matthew Brown Companies, LLC *(mbrown.kapolei@yahoo.com)*
*(Pro Se Defendants)*


*/s/ Patrick Disbennett*_____
Patrick Disbennett

16