**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE** | § | |
| **COMMISSION,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:24-cv-558-O** |
| | § | |
| **MATTHEW BROWN, ET AL.,** | § | |
| | § | |
| **Defendants.** | § | |

## <u>ORDER</u>

Before the Court are Defendants' Motion to Dismiss (ECF No. 11), filed August 15, 2024;

Plaintiff's Response (ECF No. 16), filed September 5, 2024; and Defendants' Reply (ECF No. 17),

filed September 10, 2024.  The Motion is ripe for this Court's review.  After considering the

briefing and relevant case law, the Court determines that Defendants' Motion to Dismiss should

be **DENIED**.

## I.    BACKGROUND[1]

This suit arises out of an alleged fraudulent scheme concerning Virgin Orbit Holdings, Inc.

("Virgin Orbit").  In 2017, Virgin Group formed and spun off Virgin Orbit, which provided

"commercial satellite launch services."  Virgin Orbit soon after began trading publicly on the

Nasdaq.  Though it boasted four successful missions, Virgin Orbit also launched failed missions.

For instance, Virgin Orbit's last mission resulted in defense satellites falling into the ocean after

the launched rockets failed to reach orbit.  Tainted with these failed missions, Virgin Orbit filed a

Form 8-K with the Securities and Exchange Commission ("Plaintiff" or "SEC"), "disclosing that

---

[1] Unless otherwise cited, the Court's recitation of the facts is taken from Plaintiff's Complaint.  *See* Pl.'s Compl., ECF No. 1.  At this stage, these facts are taken as true and viewed in the light most favorable to Plaintiff.  *See Sonnier v. State Farm Mut. Auto Ins.*, 509 F.3d 673, 675 (5th Cir. 2007).

it would immediately initiate a company-wide operational pause to conserve capital, pursue additional funding, and explore strategic opportunities." The next day, Virgin Orbit's stock price dropped from $1.01 per share to $0.71 per share.

Matthew Brown ("Brown") is the President, sole managing member, and sole employee of Matthew Brown Companies, LLC[2] ("Brown Companies") (collectively, "Defendants"). On March 19, 2023, Brown sent a message through LinkedIn to Virgin Orbit's Chief Executive Officer ("CEO") "to discuss a possible 'capital injection.'" Once the CEO replied to the message, Brown responded: "I have invested over $750mm of my personal capital, . . . largely in stealth mode . . . I have the bandwidth to write the $200mm." Brown bolstered his offer by stressing that this was his capital, "not . . . anyone else's."

Plaintiff casts doubt on the validity of Brown's bold assertions to Virgin Orbit. According to Plaintiff, Brown "never invested 'over $750mm' of his personal capital, he had never held any personal investments or positions in any space companies, and he did not have the bandwidth to invest $200 million of his own capital." And Brown's portrayal of his previous investments as having been "largely in stealth mode" falsely implied "that his alleged investment history was hidden from public view, when, in fact, no such investment history existed."

Nevertheless, Brown—on the same day he sent his LinkedIn message to Virgin Orbit's CEO—emailed Virgin Orbit's Vice President ("VP") of Investor Relations to schedule a call about "financing." After an exchange of emails, Brown emailed the Vice President that same day: "I hope this can get the ball rolling. I do not have access to my J.P. M brokerage acct but this should hopefully paint a decent picture until we get further down the road." Brown attached to this email

---

[2] After Plaintiff filed its Complaint, Brown informed the Court that Matthew Brown Companies, LLC was converted to a sole proprietorship, effective on August 15, 2024. *See Notice of Conversion*, ECF No. 12. Brown maintains he is the sole owner and operator of the business. *Id.* at 2.

a screenshot displaying Brown Companies' bank account balance of $182,383,991.26. According to Plaintiff though, this screenshot "was fabricated and contained materially false and misleading representations," namely, because the actual balance of the account was less than $1. Brown did not disclose the truth about the account balance to Virgin Orbit.

Brown proceeded to engage in negotiations with Virgin Orbit "over his bogus offer." As a result, Virgin Orbit relayed a non-disclosure agreement ("NDA") to Brown "requiring each side to safeguard and not disclose any confidential information exchanged during discussions surrounding Defendants' proposed investment." After the parties executed the NDA, Virgin Orbit sent Defendants a term sheet concerning Defendants' proposed $200 million investment on or around March 20, 2023. During his subsequent phone calls and emails with Virgin Orbit representatives, Brown reiterated "the same or similar false and misleading statements and omissions."

On March 22, 2023, Virgin Orbit filed yet another Form 8-K with the SEC, this time though "announcing it would immediately resume operations to prepare for its next mission while it sought new funding." This announcement did not mention Defendants or the term sheet, but Reuters later reported "Virgin Orbit was near a deal to raise $200 million from Matthew Brown Companies, 'according to a term sheet seen by Reuters.'" According to Plaintiff, the Form 8-K filing and the Reuters article resulted in an increase of Virgin Orbit's stock price from $0.44 per share to $0.59 per share.

The next day, Brown participated in a live, nationally televised interview on CNBC regarding his reported investment with Virgin Orbit, despite recently executing the NDA. During this interview, Brown confirmed the validity of his proposed $200 million investment and said that he and Brown Companies "were in 'final discussions' with Virgin Orbit and that they 'fully plan'

on closing a transaction 'in the next 24 hours.'"  Brown represented he would "basically be the owner" of Virgin Orbit after the execution of the transaction.  Brown also indicated that he and Brown Companies were "successful, experienced venture capitalists within the space industry" and "held investments 'in over 13 space companies.'"  Plaintiff asserts Brown's interview statements were false, that is, Brown "lacked the capital and resources needed to close on the $200 million investment, [and] had no experience making investments of the magnitude purportedly offered to Virgin Orbit."

On March 24, 2023, Brown proposed to Virgin Orbit that it should agree to pay Brown a three percent break-up fee should the transaction fall through.  Virgin Orbit refused Brown's proposed break-up fee and explained that "Brown needed to first place the necessary funds in escrow and respond to Virgin Orbit's basic due diligence requests."  Brown did not comply with Virgin Orbit's requests and, as a result, negotiations between the parties quickly fell apart.  On March 25, 2023, counsel for Virgin Orbit "sent Brown a cease-and-desist letter, demanding that he stop disclosing confidential information and communications in violation of the NDA."

On March 27, 2023, CNBC reported that Virgin Orbit was unable to access new funding, observing that Brown's investment offer did not manifest.  The next day, Virgin Orbit's stock price fell from $0.54 per share to $0.38 per share—a 28.4 percent decrease.  Virgin Orbit filed for bankruptcy on April 4, 2023.

The SEC brought this action against Defendants on June 17, 2024, alleging that Defendants participated in securities fraud and violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 thereunder.  Defendants, proceeding *pro se*, moved to dismiss

Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6), which is now ripe for the Court's review.[3]

## II.    LEGAL STANDARDS

### A.  Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."

To defeat a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 668 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm*

---

[3] Defs.' Mot. to Dismiss, ECF No. 11.

*Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 51 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### B. Federal Rule of Civil Procedure 9(b)

The heightened pleading standard for allegations of fraud or mistake requires a plaintiff to plead "with particularity the circumstances constituting fraud or mistake," although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). To satisfy the particularity standard of Rule 9(b), a plaintiff generally must "plead the time, place, and contents of the false representation and the identity of the person making the representation." *United States v. Bollinger Shipyards, Inc.*, 775 F.3d 255, 260 (5th Cir. 2014) (citing *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 190 (5th Cir. 2009)). "Knowledge need not be pled with particularity under Rule 9(b); it need only be pled plausibly pursuant to Rule 8." *Id.* (citing *Iqbal*, 556 U.S. at 686–87).

The particularity standard requires, at a minimum, "that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).  While a plaintiff may allege fraud based upon information and belief in instances where the "facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge, the plaintiff must still set forth the factual basis for his belief."  *Id.* at 454.  Further, the Fifth Circuit interprets Rule 9(b) strictly, "requiring a plaintiff pleading fraud to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (quoting *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564–65 (5th Cir. 2002)).

### III.    ANALYSIS

Defendants challenge the SEC's Complaint on three bases: the SEC's Complaint lacks the specificity required by Rule 9(b),[4] the SEC omitted facts and erroneously relied on the NDA and term sheet to advance its legal theories,[5] and the SEC's procedural misconduct and obstruction in its investigation of Brown undermine the legitimacy of its Complaint.[6]  The Court addresses each argument in turn.

#### A.  Securities Fraud Pleading Standards

Defendants contend the SEC's Complaint is predicated on unsubstantiated allegations and thus fails the particularity requirements under Rule 9(b).[7]  They also argue the Complaint does not

---

[4] Defs.' Mot. to Dismiss 2–4, ECF No. 11.
[5] *Id.* at 4–7.
[6] *Id.* at 7–16.
[7] *Id.* at 3–4.

allege facts rising to materiality and scienter.[8]  By contrast, Plaintiff argues its Complaint pleads Defendants' alleged securities fraud with sufficient particularity and plausibly asserts the essential elements of its claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. [9]  The Court agrees with Plaintiff.

### 1.   The Who, What, When, Where, and How of the Alleged Securities Fraud

Defendants broadly contend Plaintiff's Complaint fails to meet Rule 9(b)'s requirements.[10] Federal Rule of Civil Procedure 9(b) requires that a plaintiff "must state with particularity the circumstances constituting fraud or mistake."  As discussed, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where, and how" in a complaint alleging fraud. *Williams*, 417 F.3d at 453 (quotation marks and citation omitted).  The SEC's Complaint does just that.

To begin, the Complaint alleges that Brown individually and/or on behalf of Brown Companies made the false or misleading statements and omissions, thus clarifying *who* engaged in the alleged fraudulent scheme with particularity.[11]  Next, Plaintiff's Complaint asserts *what* fraudulent scheme Defendants allegedly engaged in—namely, "a fraudulent scheme to submit and publicly tout a bogus offer to purchase $200 million of stock from Virgin Orbit."[12]  Indeed, the Complaint even goes beyond asserting a general fraudulent scheme by describing the specific contours of Defendants' alleged deceptive acts, misrepresentations, and omissions.  For instance, the Complaint details that Defendants sent unsolicited messages through LinkedIn to Virgin Orbit's CEO,[13] emailed Virgin Orbit's VP of Investor Relations and attached a screenshot of the

---

[8] *Id.* at 3.
[9] Pl.'s Resp. 4, ECF No. 16.
[10] Defs.' Mot. to Dismiss 2–4, ECF No. 11.
[11] Pl.'s Compl. ¶¶ 19–21, ECF No. 1.
[12] *Id.* ¶ 1.
[13] *Id.* ¶ 19.

"fabricated" account balance,[14] and engaged in the CBNC interview where they confirmed the legitimacy of the $200 million investment.[15]

Next, the Complaint articulates *when* Defendants' fraudulent actions took place, that is, between March 19, 2023, and March 24, 2023.[16]  It also specifies *where* Defendants engaged in the fraudulent scheme and made the misstatements and omissions—on LinkedIn, through emails with Virgin Orbit representatives, and on the CNBC interview.[17]

And finally, Plaintiff's Complaint sets forth *how* Defendants engaged in the alleged fraudulent scheme and made the false and misleading representations and omissions.  For example, the Complaint explains that Brown "never invested 'over $750mm' of his personal capital, he had never held any personal investments or positions in any space companies, and he did not have the bandwidth to invest $200 million of his own capital."[18]  The Complaint also illustrates how Brown's screenshot was deceptive and misleading: "[T]he actual balance of the Matthew Brown Companies' bank account that Brown identified to support his offer was *less than $1*, which Defendants *never disclosed* to Virgin Orbit."[19]  And the Complaint explains that Brown's misstatements and omissions during his CBNC interview "create[d] the false and misleading impression that Defendants' $200 million offer was legitimate, and could impact Virgin Orbit's stock price."[20]

In sum, the SEC's Complaint adequately sets forth the who, what, when, where, and how of Defendants' alleged securities fraud as required under Rule 9(b).

---

[14] *Id.* ¶ 21–22.
[15] *Id.* ¶¶ 29–32.
[16] *Id.* ¶¶ 2–4, 33.
[17] *Id.* ¶¶ 19, 21, 29–32.
[18] *Id.* ¶ 20.
[19] *Id.* ¶ 22 (emphasis added).
[20] *Id.* ¶ 32.

Moreover, Defendants' reliance on the heightened pleading standards under the Private Securities Litigation Reform Act of 1995 ("PSLRA") is misplaced.[21]   As Plaintiff correctly explains, the PSLRA does not apply to SEC enforcement actions, only to private securities fraud actions.[22]  *See SEC v. Kornman*, 391 F. Supp. 2d 477, 494 (N.D. Tex. 2005) ("[PSLRA] standards only apply in private actions, and not SEC enforcement actions.").

Having surveyed the Complaint, the Court rejects Defendants' argument that Plaintiff's Complaint was not pleaded with particularity in accordance with Rule 9(b).[23]

### 2.  Materiality and Scienter

Defendants broadly and briefly argue that the Complaint's allegations neither establish "*material* misrepresentations or omissions causing intentional or actual harm" nor adequately "allege facts that give rise to a strong inference of *scienter*."[24]  In response, Plaintiff contends the Complaint plausibly demonstrates each of these disputed elements.[25]

"Section 10(b) of the Exchange Act grants the SEC rulemaking authority to define and thereby prohibit deceptive or manipulative practices."  *SEC v. Verges*, 716 F. Supp. 3d 456, 466 (N.D. Tex. 2024) (citing 15 U.S.C. § 78j(b)).  Rule 10b-5, which incorporates Section 10(b), articulates three means of liability and makes it unlawful for someone:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

---

[21] Defs.' Mot. to Dismiss 3, ECF No. 11 ("[P]laintiff[] must meet the heightened pleading standards set by the PSLRA.").
[22] Pl.'s Resp. 10, ECF No. 16.
[23] *See* Defs.' Mot. to Dismiss 2–4, ECF No. 11.
[24] *Id.* at 3–4 (emphasis added).
[25] Pl.'s Resp. 7, ECF No. 16.

17 C.F.R. § 240.10b-5.  Accordingly, "[t]o establish violations of § 10(b) of the Exchange Act and Rule 10b–5, . . . the SEC is required to show that the defendant in question made a material misstatement or omission, in connection with the purchase or sale of securities, with scienter." *SEC. v. Couch*, No. 3:14-CV-1747-D, 2014 WL 7404127, at *7 (N.D. Tex. Dec. 31, 2014). Plaintiff's Complaint does so.

To begin, the parties do not dispute that this action arises out of Defendants' "connection with the purchase or sale of securities." *Id.*  Turning to materiality, a false or misleading statement or omission is material "if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest." *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002) (citation omitted).  Defendants simply argue "the SEC has not demonstrated material misrepresentations or omissions."[26]  Defendants point to no evidence to support this conclusory argument.  The Court is not persuaded.

By contrast, Plaintiff directs the Court to Defendants' various misstatements and omissions it argues are material.[27]  For example, taking the Complaint's allegations as true, Brown misstated through his LinkedIn messages his ability and "bandwidth" to fund a $200 million investment.[28] Brown's screenshot falsely displayed a $182,383,991.26 account balance when in fact the account contained less than $1.[29]  Moreover, Brown misstated information about his $200 million offer and his investments "in over 13 space companies" during the CNBC interview.[30]  Defendants did

---

[26] Defs.' Mot. to Dismiss 4, ECF No. 11.
[27] Pl.'s Resp. 8, ECF No. 16.
[28] Pl.'s Compl. ¶¶ 19–21, ECF No. 1.
[29] *Id.* ¶¶ 21–22.
[30] *Id.* ¶¶ 29–31.

not disclose their lack of capital resources or lack of investment experience of this magnitude to Virgin Orbit.[31]

A reasonable investor would likely have viewed these misstatements and omissions "as having significantly altered the 'total mix' of information made available." *SEC v. Felton*, No. 3:20-CV-0822-G, 2021 WL 2376722, at *10 (N.D. Tex. June 10, 2021) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). Bolstering this conclusion is the fact that Virgin Orbit's stock increased 33.1% after it submitted Form 8-K announcing it was resuming operations and Reuters leaked that Virgin Orbit was negotiating a $200 million investment. *See SEC v. Sethi*, 910 F.3d 198, 206 (5th Cir. 2018) (The defendant "misstated his relationships with major oil companies when offering interests in his drilling venture and, as a result, *misled investors*." (emphasis added)). At this juncture, the Court is satisfied Plaintiff's Complaint sufficiently alleges materiality.

The Complaint's facts likewise establish scienter to survive Defendants' Rule 12(b)(6) Motion. "To prove scienter, the SEC need only prove that the defendant acted with severe recklessness." *Id.* Severe recklessness means:

> [T]hose highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it.

*Id.* (citation omitted). "[B]ecause this case is not brought under the PLSRA, the SEC need not plead a strong inference of severe recklessness, but instead only facts that support an inference of fraud, i.e. strong circumstantial evidence of conscious misbehavior or recklessness." *SEC v. Narayan*, No. 3:16-CV-1417-M, 2017 WL 4652063, at *12 (N.D. Tex. Aug. 28, 2017) (quotation marks and citation omitted). Again, Defendants proffer a conclusory argument that Plaintiff's

---

[31] *Id.* ¶ 31.

Complaint "does not sufficiently allege facts that give rise to a strong inference of scienter."[32]
Again, the Court is not persuaded.

Taking the Complaint's facts as true, Defendants knew the bank account balance was less than $1, not $182,383,991.26.[33]  Defendants also knew they had not invested "in over 13 space companies" and did not have the "bandwidth" for a valid $200 million offer.[34]  Brown repeatedly and falsely touted his ability to invest his own capital to Virgin Orbit representatives.[35]  And as a result of these misrepresentations, Virgin Orbit's stock price decreased by 28.4 percent after Defendants' investment offer fell through.  *See Couch*, 2014 WL 7404127, at *6 ("The complaint alleges that defendants made statements that they knew were false when made, or made representations that were so obviously false or misleading that they had every reason to know they would potentially mislead investors.").  In sum, "[t]hese allegations are sufficient to raise an inference that [D]efendants acted at least with severe recklessness" at this state of the litigation. *Id.*  As such, the Court concludes Plaintiff's Complaint adequately pleads scienter to survive Defendants' Rule 12(b)(6) Motion.

### B.  The Complaint's Alleged Omitted Facts and Reliance on the NDA and Term Sheet

Defendants next argue the Court should dismiss Plaintiff's Complaint because it omitted pertinent facts and erroneously relied on the NDA and term sheet to advance its "unprecedented and ill-conceived legal theories."[36]  In response, Plaintiff contends that Defendants improperly "rely on alleged facts' and evidence not contained in the Complaint" and that Defendants' alleged

---

[32] Defs.' Mot. to Dismiss 3, ECF No. 11.
[33] *Id.* ¶¶ 21–22.
[34] *Id.* ¶¶ 19, 30.
[35] *Id.* ¶¶ 19–20.
[36] Defs.' Mot. to Dismiss 5, ECF No. 11.

breach of the NDA and "[w]hether the term sheet was binding ha[ve] no bearing on the Complaint's well-pled fraud allegations."[37]  The Court agrees with Plaintiff.

Beginning with the alleged omitted facts, Defendants assert the SEC, "whether due to oversight or carelessness," did not include an iMessage from March 22, 2023, in which Defendants communicated concerns about the term sheet to Virgin Orbit's VP of Investor Relations.[38]  Defendants also reference other communications from March 23, 2023, in which the VP of Investor Relations purportedly expressed approval of the CNBC interview.[39]  Further, Defendants assert they participated in the CNBC interview in part because of the Virgin Orbit CEO's "recommendation to proceed with the television interview."[40]

Defendants' reliance on these alleged omitted facts is misplaced.  A "district court can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief."  *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003).  "In determining whether to grant a motion to dismiss, the district court must not go outside the pleadings."  *Id.*  The Fifth Circuit articulates "one limited exception" to this rule.  A district court may consider "documents *attached* to a motion to dismiss."  *Id.* (emphasis added).  The Fifth Circuit restricts "such consideration to documents that are *referred* to in the plaintiff's complaint and are *central* to the plaintiff's claim."  *Id.* (emphasis added).

Here, the evidence Defendants argue the SEC omitted in the Complaint was neither attached to their Motion to Dismiss nor referenced in the Complaint.  The evidence is thus outside the purview of the dismissal stage of litigation.  Accordingly, the Court rejects this argument.

---

[37] Pl.'s Resp. 12–13, ECF No. 16.
[38] Defs.' Mot. to Dismiss 5, ECF No. 11.
[39] *Id.*
[40] *Id.*

The Court now turns to the NDA and term sheet. These documents are mentioned in the Complaint, but Plaintiff contends they are not attached to Defendants' Motion or central to its claim.[41] Regardless of whether the Court may consider these documents under Fifth Circuit precedent, they are not dispositive as to the SEC's securities fraud claim. Indeed, as Plaintiff explains, the term sheet shows that "Virgin Orbit provided it to Defendants *as a result of* Defendants' fraudulent conduct and statements."[42] Likewise, the Complaint's allegation that Brown breached the NDA, with which Defendants take issue,[43] is not determinative to the Complaint's accusation that "Brown lied in his [CNBC] interview and engaged in other fraudulent conduct and statements both during and outside of that interview."[44] As such, this argument also does not warrant dismissal of the SEC's Complaint.

### C. The SEC's alleged Misconduct and Obstruction

Lastly, the majority of Defendants' Motion argues the SEC's investigation of Defendants "has been marred by procedural misconduct and obstruction, undermining the legitimacy of the allegations in their [sic] Complaint."[45] By contrast, Plaintiff contends that this argument concerns matters outside the Complaint and not available for the Court's consideration and that this argument is "vague, unsubstantiated, and difficult to follow."[46] The Court again agrees with Plaintiff.

To be sure, Defendants point to evidence unattached to their Motion and not referenced in the Complaint. For instance, Defendants refer to the SEC's "Voluntary Request" for production

---

[41] Pl.'s Resp. 13, ECF No. 16.
[42] *Id.* (emphasis added).
[43] Defs.' Mot. to Dismiss 5, ECF No. 11 (The Complaint contains "sweeping and incorrect allegations that the Defendants violated the NDA through this interview.").
[44] Pl.'s Resp. 13, ECF No. 16.
[45] Defs.' Mot. to Dismiss 5, ECF No. 11.
[46] Pl.'s 13–14, ECF No. 16.

dated July 27, 2023; numerous communications between Defendants and SEC staff; Defendants' testimony before SEC staff; and various iMessages between Defendants and Virgin Orbit's CEO, among other evidence.[47]   This evidence remains outside the bounds of what this Court may consider at the dismissal stage.  *See, e.g.*, *Mansfield SEQ. 287 & Debbie Ltd. v. Citibank, N.A.*, No. 3:10-CV-2204-L, 2011 WL 3471315, at *4 (N.D. Tex. Aug. 5, 2011) ("As Plaintiff did not attach a copy of the Agreement to its pleadings and Defendant did not attach a copy to its motion to dismiss, the court cannot consider the Agreement as a whole.").

Moreover, this argument relies on evidence solely asserted by Defendants.  "[B]ecause the [D]efendants' motion to dismiss relies on the [D]efendants' *own* evidence, rather than the well-pleaded facts in the pleadings," the Court rejects this argument.  *Don Stevenson Design, Inc. v. TBP Enters. I, Ltd.*, No. SA-16-CV-01128-RCL, 2018 WL 1902688, at *2 (W.D. Tex. Apr. 19, 2018) (emphasis added).

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Motion to Dismiss Plaintiff's Complaint (ECF No. 11).

**SO ORDERED** on this **18th day** of **December, 2024**.

UNITED STATES DISTRICT JUDGE

---

[47] Defs.' Mot. to Dismiss 7–15, ECF No. 11.