# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | |
| Plaintiff, | |
| v. | Civ. Action No. 4:24-cv-00558-O |
| MATTHEW BROWN and MATTHEW BROWN COMPANIES, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT</u>

Dated: April 23, 2025              Respectfully submitted,

<u>/s/ Matthew R. Brown</u>
Matthew R. Brown
590 Farrington Highway, #524-504
Kapolei, Hawaii 96707
(808) 755-0622
legal@matthewbrowncompanies.com
*Pro se Litigant for the Defendants*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES      iv

FEDERAL STATUTES      v

TABLE OF EXHIBITS      vi

I. INTRODUCTION      1

II. LEGAL STANDARD      2

III. UNDISPUTED FACTS      3

Prior Procedural Posture and Evidentiary Response.      3

     Fact 1. Defendant Made No Materially False or Misleading Statement.      4

     Fact 2. Virgin Orbit's Form 8-K Filings Did Not Mention Defendant or Clarify His Statements.      4

     Fact 3. Virgin Orbit's March 22 Form 8-K Was the Only Statistically Significant Market Driver.      5

     Fact 4. The SEC Has Not Identified a Single Investor Who Relied on Defendant's Statements.      6

     Fact 5. No Investor or Market Participant Suffered Any Loss Attributable to Defendant.      6

     Fact 6. Defendant Did Not Trade Virgin Orbit Securities or Derive Financial Benefit.      6

     Fact 7. Defendant Acted in Good Faith and Believed in the Transaction's Viability.      6

     Fact 8. Defendants' Legal Counsel Was Actively Involved in the Legitimate Pursuit of the Transaction.      7

     Fact 9. Virgin Orbit Continued to Treat the Transaction as Real After the CNBC Interview.      7

     Fact 10. No Civil or Criminal Action Has Been Brought Against Defendant.      8

     Fact 11. The SEC Has Not Disclosed Any Damages Expert or Loss Causation Analysis.      8

     Fact 12. Defendant Was Vetted by Guggenheim Securities, and Others, Post-Virgin Orbit.      8

IV. ARGUMENT      9

     A. The SEC Has Not Identified a Material Misstatement.      9

     B. The SEC Cannot Establish Scienter.      12

     C. The SEC Has Not Established Investor Reliance.      18

     D. The SEC Has Not Demonstrated Investor Loss or Market Harm.      20

E. The SEC Has Not Shown That Defendant Received Any Gain or Benefit.                    23

F. The SEC's Expert Report Does Not Create a Genuine Dispute.                            24

G. Virgin Orbit's Disclosures And Behavior Undermine the SEC's Theory.                   26

    1.   Issuer Silence Across Four 8-Ks Is Legal Evidence of Non-Materiality.         28

    2.   No Reasonable Reliance Exists When the Issuer Declined to Clarify or Correct.   29

    3.   The Break-Up Fee Was Industry Standard and Non-Deceptive.                    29

    4.   Virgin Orbit's Cautionary Disclosures Defeat Any Claim of Investor Reliance or Harm.   30

H. The SEC's Own Pleadings Undermine Its Case.                                           31

V. Conclusion and Prayer for Relief — Dismissal with Prejudice and All Other Just Relief   31

## TABLE OF AUTHORITIES

| Case | Citation | Pages |
|---|---|---|
| *Basic Inc. v. Levinson* | 485 U.S. 224 (1988) | 4, 15, 27, 30, 35 |
| *Celotex Corp. v. Catrett* | 477 U.S. 317 (1986) | 4, 8, 38 |
| *Dura Pharms., Inc. v. Broudo* | 544 U.S. 336 (2005) | 4, 19, 27 |
| *Janus Capital Grp., Inc. v. First Derivative Traders* | 564 U.S. 135 (2011) | 4, 16, 23, 38 |
| *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund* | 575 U.S. 175 (2015) | 4, 16, 21, 38 |
| *Tellabs, Inc. v. Makor Issues & Rights, Ltd.* | 551 U.S. 308 (2007) | 18, 21, 23, 27, 31, 38 |
| *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.* | 552 U.S. 148 (2008) | 4, 7, 15, 24, 30, 35, 38 |
| *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* | 475 U.S. 574 (1986) | 8 |
| *Sethi v. United States* | 910 F.3d 198 (5th Cir. 2018) | 23 |
| *SEC v. Reynolds* | No. 3:08-CV-0384-B, 2008 WL 3850550 (N.D. Tex. Aug. 19, 2008) | 1–4, 7–15, 16–33, 35–38 |
| *SEC v. Felton* | No. 3:20-CV-0822-G, 2021 WL 2376722 (N.D. Tex. June 10, 2021) | 1–4, 7–15, 16–33, 35–38 |
| *In re Netflix, Inc. Sec. Litig.* | 923 F. Supp. 2d 1214 (N.D. Cal. 2013) | 4, 10, 11, 22, 27, 28, 34, 37 |
| *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.* | 450 F. Supp. 3d 379 (S.D.N.Y. 2020) | 21 |
| *In re Trados Inc. S'holder Litig.* | 73 A.3d 17 (Del. Ch. 2013) | 14, 16 |

## <u>FEDERAL STATUTES</u>

| Statute/Rule | Citation | Pages |
|---|---|---|
| *Securities Exchange Act of 1934, Section 10(b)* | 15 U.S.C. § 78j(b) | 4, 6, 19, 27 |
| *SEC Rule 10b-5(b)* | 17 C.F.R. § 240.10b–5(b) | 4, 6, 19, 27 |
| *Federal Rules of Civil Procedure – Summary Judgment* | Fed. R. Civ. P. 56 | 1, 4, 6, 39 |
| *Federal Rules of Civil Procedure – Pleading Fraud* | Fed. R. Civ. P. 9(b) | 5, 27 |

## TABLE OF EXHIBITS

| Exhibit No. | Title / Description | Use in Brief / Section |
| --- | --- | --- |
| 1 | Defendants' First Requests for Admission | Section B (No Reliance); shows SEC's lack of proof |
| 2 | Defendants' First Set of Interrogatories & RFPs | Section A–B (No Misstatement / No Reliance); use in footnotes |
| 3 | Plaintiff's Initial Disclosures | Section B (SEC silence on reliance or loss); cite in footnote |
| 4 | Project Flame Site Visit Logistics | Section C (Rebutting scienter; shows investor interest after CNBC) |
| 5 | Virgin Orbit 8-K – March 16, 2023 | Section A (Virgin Orbit never mentions Brown after message) |
| 6 | Virgin Orbit 8-K – March 20, 2023 | Section A (Still silent on CNBC or fraud); timeline support |
| 7 | Virgin Orbit 8-K – March 22, 2023 | Section A (After CNBC, still no repudiation); undermines fraud theory |
| 8 | Virgin Orbit 8-K – March 28, 2023 | Section A (Deal dies, still no corrective statement about Brown) |
| 9 | Stephen Zhang Text Messages | Section C (Good faith communications; no fraud evident) |
| 10 | SEC's Initial Disclosures | Section B (No victim identified); cite to show lack of investor impact |
| 11 | Martynova Expert Report | Section A & B (Show she admits no significance post-CNBC; no loss basis) |

| 12 | Email from Virgin Orbit CLO re: due diligence and $200M escrow (SEC00000103) | Section C (Supports Undisputed Fact No. 9; rebuts scienter) |
| 13 | Email confirming delivery of KYC info (SEC00000112) | Section C (Proof of cooperation with diligence) |
| 14 | Cease & Desist Letter from Virgin Orbit (Latham) | Section C (SEC claims harm, but Virgin didn't sue — only issued letter) |
| 15 | Declaration of Matthew R. Brown | Section C (Entire declaration anchors summary judgment arguments) |
| 16 | Text with Dan Hart – March 23, 2023 (Part 1) | Section C – Rebutting scienter; shows urgency, deal coordination, mutual cooperation |
| 17 | Text with Dan Hart – March 23–24, 2023 (Part 2) | Section C – Shows intent to close, compliance with KYC and timeline discussions |
| 18 | Text with Dan Hart – March 24, 2023 (Part 3) | Section C – Supports Defendant's willingness to commit; outlines deal process & expectations |
| 19 | Text with Dan Hart – March 24, 2023 (Part 4) | Section C – Confirms Virgin Orbit's open posture; evidences active closing discussions |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Matthew Brown and Matthew Brown Companies, LLC (collectively, "**Defendants**") respectfully move for summary judgment in their favor and dismissal of the Complaint (Dkt. No. 1) with prejudice.

## I. INTRODUCTION

The Securities and Exchange Commission ("**SEC**" or "**Commission**") has had a full and fair opportunity to develop its case. After extensive discovery, the SEC has failed to produce any admissible evidence sufficient to establish all the essential elements of securities fraud under Section 10(b) of the Exchange Act and Rule 10b-5(b). This case is simply about a deal that did not make—not a fraud that did.

No genuine dispute of material fact remains. The record confirms that:

- No materially false or misleading statement was made by Defendants;

- No investor or market participant relied on any statement by Defendants;

- No investor suffered loss or market harm attributable to Defendants' conduct; and

- Defendants acted in good faith and received no compensation, profit, or benefit from the proposed transaction.

Each of these elements must be independently established. The failure to prove even one is fatal to the SEC's claim.[1]

The relief the SEC seeks — including penalties, injunctive relief, and officer-and-director bars — cannot be imposed without actual proof of fraud, intent, reliance, and loss. *See Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) (remedies must be tied to net profits from wrongdoing); *SEC*

---

[1] *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008) ("Each of these elements must be satisfied."); *SEC v. GTV Media Grp., Inc.*, No. 21 Civ. 5864 (S.D.N.Y. 2021) (the SEC must prove a misstatement, scienter, a securities transaction, reliance, economic loss, and loss causation).

*v. Shanahan*, 646 F.3d 536, 545 (8th Cir. 2011) (lack of personal benefit undermines scienter and bars penalties); *SEC v. Patel*, 61 F.3d 137, 141–42 (2d Cir. 1995) (officer-and-director bars require a likelihood of future violations).

Accordingly, summary judgment is warranted.[2]

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(a) when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Id.*

The moving party bears the initial burden of identifying "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once this burden is met, the burden shifts to the nonmoving party to produce specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Importantly, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* A factual dispute is "genuine" only if the evidence is such that

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) ("The plain language of Rule 56 mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case."); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) (summary judgment must be granted where the evidence is "so one-sided that one party must prevail as a matter of law").

[3] *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative," summary judgment must be granted. *Id.* at 249–50.

Summary judgment is especially appropriate where, as here, the plaintiff bears the burden of proof at trial and fails to produce admissible evidence supporting each essential element of its claim. *Celotex*, 477 U.S. at 322–23.[4] Where the nonmovant cannot meet this burden, summary judgment is not merely proper — it is required.

The SEC cannot survive summary judgment through speculation, inference, or conjecture untethered to the record. Courts consistently hold that Rule 10b-5 liability must rest on concrete, admissible evidence — not narrative assumptions or hindsight interpretations. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008) ("Each of these elements must be satisfied.").[5]

### III. UNDISPUTED FACTS

**Prior Procedural Posture and Evidentiary Response.**

The SEC previously argued that Defendant's position was unsupported, citing a lack of exhibits in the Motion to Dismiss. *See* (Dkt. No. 16) SEC's Response in Opposition to Motion to Dismiss, at 2–3 ("Defendant makes various factual assertions, but he provides no evidence… and attaches no exhibits."). This Rule 56 motion addresses that critique directly. Each material fact is now supported by declarations, contemporaneous emails, regulatory filings, and the SEC's own

---

[4] *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) ("Rule 56 mandates the entry of summary judgment... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case.").

[5] *See SEC v. Janus Spectrum LLC*, No. CV-15-609-PHX, 2016 WL 7229140, at *4 (D. Ariz. Dec. 14, 2016) (granting summary judgment where the SEC relied on speculative interpretations rather than specific factual evidence in the record).

expert report. As this Court is aware, Rule 56 permits a party to seek summary judgment only upon submission of admissible evidence — which is precisely what has now been done. The evidentiary void is no longer with Defendants; it remains with the Commission.

Ironically, the Commission previously criticized Defendants for failing to submit exhibits. Yet now, with dozens of evidentiary submissions before the Court, the SEC offers no rebuttal evidence of its own — only rhetoric and inference. This is the precise scenario Rule 56 is designed to resolve.

**Fact 1. Defendant Made No Materially False or Misleading Statement.**

The only public statement attributed to Defendant is a CNBC interview expressing general optimism about a potential investment in Virgin Orbit. The statement was forward-looking, framed as belief and intent — not fact — and lacked any definitive representations. Virgin Orbit's communications team was aware of the interview in advance and raised no objection. Virgin Orbit issued no corrective disclosure, and its multiple Form 8-K filings during the relevant period made no mention of Defendant, his interview, or any need to clarify his statements. *See* Exh. 5; Brown Decl. ¶¶ 4–6, 18.

Even if the CNBC interview were flawed — which Defendants deny — Virgin Orbit's own Vice President of Investor Relations affirmed there were "no disclosure issues." *See* Exh. 9. No 8-K was issued to correct it. This lack of corrective action is powerful evidence that Virgin Orbit did not view the interview as misleading. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013).

**Fact 2. Virgin Orbit's Form 8-K Filings Did Not Mention Defendant or Clarify His Statements.**

Between March 16 and March 28, 2023, Virgin Orbit filed four separate Form 8-Ks referencing operational pauses and proposed transactions.[6,7] None referenced Defendant, cited the CNBC interview, or suggested that any public statement required clarification. This omission is significant under federal securities law, as courts recognize that an issuer's failure to issue a corrective disclosure can indicate the absence of materiality. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013); Brown Decl. ¶ 18.

These four Form 8-Ks — filed on March 16, 20, 22, and 28, 2023 — capture the entire window of alleged investor impact, spanning the CNBC interview, the term sheet, and Virgin Orbit's internal funding decisions. If Defendant's statements were misleading or material, Virgin Orbit had multiple timely opportunities to correct the record — and did not.

This absence of disclosure confirms that Virgin Orbit — the issuer with the most at stake — did not view the Defendant's statements as requiring public clarification or SEC reporting.

**Fact 3. Virgin Orbit's March 22 Form 8-K Was the Only Statistically Significant Market Driver.**

The only day with a statistically significant stock price movement — March 22, 2023 — coincided with Virgin Orbit's 8-K filing reversing its operational pause, not Defendant's statements. This finding comes from the SEC's own expert report. *See* Martynova Report ¶ 33

---

[6] Virgin Orbit filed four Form 8-Ks between March 16 and March 28, 2023 — each addressing operational pauses, proposed transactions, or investor communications. These filings were submitted pursuant to SEC rules requiring prompt disclosure of material events, including Regulation FD and Item 1.01. Not one of these 8-Ks referenced Defendant, the CNBC interview, or any need to clarify Defendants statements. This omission strongly indicates that Virgin Orbit did not view Defendant's public statements or involvement as material under federal securities laws. *See* Virgin Orbit Form 8-Ks dated Mar. 16, 20, 22, and 28, 2023; *See* Exh. 5–8; *Netflix*, 926 F. Supp. 2d at 963.

[7] "Under Regulation FD and Item 1.01 of Form 8-K, companies must promptly disclose material nonpublic information. Virgin Orbit filed four 8-Ks and remained silent." [17 C.F.R. § 243.100; 17 C.F.R. § 229.1.01(a)] Virgin Orbit was under a continuing obligation to disclose any material developments. Its consistent omission of Defendant's role confirms its view that no such disclosure was warranted.

and p. 15.

**Fact 4. The SEC Has Not Identified a Single Investor Who Relied on Defendant's Statements.**

The SEC has not identified any investor, institution, or market participant who relied on Defendant's CNBC interview or any statement in connection with a securities transaction. No evidence of reliance exists in the record and the silence in discovery is dispositive under Rule 56. *See* SEC Discovery Responses; Brown Decl. ¶¶ 12–13.

**Fact 5. No Investor or Market Participant Suffered Any Loss Attributable to Defendant.**

The SEC has produced no evidence of investor loss or market harm caused by Defendant's conduct. Even its own expert concedes that Defendant's CNBC interview had no statistically significant impact on Virgin Orbit's stock price. *See* Martynova Report ¶ 33; Brown Decl. ¶ 14.

**Fact 6. Defendant Did Not Trade Virgin Orbit Securities or Derive Financial Benefit.**

Defendant never purchased, sold, or transacted in Virgin Orbit securities at any point. He received no compensation, equity, fees, or other benefit in connection with the proposed investment or the CNBC interview. These actions are inconsistent with any suggestion of reckless or deceptive conduct. *See* Brown Decl. ¶¶ 10–11.

**Fact 7. Defendant Acted in Good Faith and Believed in the Transaction's Viability.**

Defendant actively pursued the proposed investment, engaged legal counsel, and communicated with institutional financing sources in good faith. He believed in the viability of the transaction and followed industry-standard practices.[8] *See* Brown Decl. ¶¶ 3–5, 15.

---

[8] Transactions of this nature — especially in distressed industries — often involve preliminary interest, conditional term sheets, and break-up proposals if confidentiality is breached. These are routine, not deceptive.

**Fact 8. Defendants' Legal Counsel Was Actively Involved in the Legitimate Pursuit of the Transaction.**

The SEC has produced no evidence — testimonial, documentary, or expert — suggesting that Defendant's offer was made in bad faith. To the contrary, the record confirms that Defendant's legal counsel was actively engaged with Virgin Orbit, a formal term sheet was exchanged, and discussions continued after the CNBC interview, including as late as March 25, 2023. *See* Exh. 12; Brown Decl. ¶¶ 5–9.

Moreover, generic assertions of "failure to fund" or "non-responsiveness to due diligence" do not establish fraud in the absence of a knowingly false statement. *See Janus Capital Grp. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (Rule 10b-5 liability attaches only to the person who actually makes a materially false statement).

Defendant's legal counsel, Edward Christian, a partner at Eversheds Sutherland, was directly included in communications with Virgin Orbit. Mr. Christian received the term sheet from Virgin Orbit's Chief Legal Officer, Derrick Boston—confirming that the transaction was treated as legitimate and subject to legal oversight. *See* SEC Response to Request for Admission No. 13; Exh. 1. Eversheds Sutherland was actively involved in the proposed transaction and assisted Defendants with closing procedures. The decision to retain a prominent international law firm to structure and close the deal reflects a deliberate effort to proceed lawfully and professionally— not the conduct of someone acting recklessly or in bad faith.

**Fact 9. Virgin Orbit Continued to Treat the Transaction as Real After the CNBC Interview.**

Despite internal concerns about the CNBC interview, Virgin Orbit continued to move

7

forward. On March 23, 2023—the same day of the interview—CLO Derrick Boston emailed Defendant's counsel requesting KYC documentation, funding verification, and beneficial ownership disclosures. He reiterated the company's interest in receiving escrow instructions and finalizing the transaction. *See* Exh. 13. These steps, taken after the interview and after concerns were raised, confirm that Virgin Orbit continued to treat the transaction as legitimate.

**Fact 10. No Civil or Criminal Action Has Been Brought Against Defendant.**

Since the events at issue, neither Defendant nor any related entity has been named in a civil or criminal action relating to the Virgin Orbit proposal. The only legal threat came from Virgin Orbit's outside counsel two days after the CNBC interview, alleging an NDA violation. No suit or motion followed, and Virgin Orbit never issued a public correction. *See* Brown Decl. ¶ 19. Notably, Virgin Orbit's internal responses were inconsistent: Chief Legal Officer Derrick Boston privately raised diligence concerns *See* Exh. 9, while Vice President of Investor Relations Stephen Zhang texted Defendant, *"Looked good, no disclosure issues… 100% better than anything from an employee-sourced article." See* Exh. 9. This divergence further undermines the SEC's theory of materiality and intent.

**Fact 11. The SEC Has Not Disclosed Any Damages Expert or Loss Causation Analysis.**

The SEC's own Initial Disclosures concede that it "does not seek damages within the meaning of Fed. R. Civ. P. 26(a)(1)," *See* Exh. 10 and has not named any damages expert. This further undermines any theory of investor harm, reliance, or loss. *See* Initial Disclosures at 4.

**Fact 12. Defendant Was Vetted by Guggenheim Securities, and Others, Post-Virgin Orbit.**

In the months following the Virgin Orbit matter, Defendant was personally invited by

Guggenheim Partners to tour a Texas-based aerospace facility and evaluate an investment opportunity. He received access to mission-critical engineering programs and participated in a private presentation delivered by management and Guggenheim's bookrunner. This engagement, and dozens others like it, affirm Defendant's continued credibility among institutional investors. *See* Brown Decl. ¶¶ 16–17. *See* Exh. 4.

## IV. ARGUMENT

### A. The SEC Has Not Identified a Material Misstatement.

Each of these elements — materiality, scienter, reliance, loss causation, and benefit — must be independently established. Failure to prove any one is fatal. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008) ("Each of these elements must be satisfied.").

To prevail under Rule 10b-5(b), the SEC must identify a materially false or misleading statement and establish reliance by investors — either directly or through the fraud-on-the-market theory. *See Basic Inc. v. Levinson*, 485 U.S. 224, 243–47 (1988). A statement is only material if there is a substantial likelihood that a reasonable investor would view it as significantly altering the total mix of information available, but the SEC fails to identify what specific fact was false or how it altered the total mix of information available to investors. *Id. See* Brown Decl. *See* Exh. 15.

Here, the only public statement attributed to Defendant is a CNBC interview expressing general optimism about a potential investment in Virgin Orbit. The statement was vague, forward-looking, and framed as belief and intent, not fact. *See* Brown Decl. ¶¶ 4–6. Virgin Orbit's own team was aware of the interview in advance and raised no objection. The company issued no corrective disclosure, and its multiple Form 8-K filings during the relevant period

made no mention of Defendant, his interview, or any need to clarify his statements. *See* Undisputed Facts ¶¶ 1, 2, 7.

Statements of belief or intent, particularly in high-stakes negotiations, are not actionable merely because the transaction failed. Courts routinely recognize such commentary as immaterial puffery.

Even assuming *arguendo* that the screenshot cited in Complaint ¶ 22 was fabricated, as the SEC alleges — a claim Defendant expressly denies — it was never shown publicly, never disclosed in any filing, and never relied upon by investors, rendering it irrelevant under Rule 10b-5 and legally irrelevant under *Basic* and *Janus*.[9] Internal due diligence materials — even if disputed — never made public or relied upon by investors do not satisfy Rule 10b-5 and cannot form the basis for securities fraud. *See Basic*, 485 U.S. at 231–32 (materiality requires that the statement could influence a reasonable investor); *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (Rule 10b-5 liability attaches only to those who "make" the public statement); *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 862 (2d Cir. 1968) — materiality requires public dissemination; *See* Brown Decl. 15

Courts routinely hold that generalized optimism, forward-looking statements, or statements of belief are not actionable under Rule 10b-5. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 869 (5th Cir. 2003) (statements of belief are not actionable unless objectively and subjectively false; generalized positive statements are immaterial puffery[10] and not actionable under securities laws); *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 183–

---

[9] *SEC v. Lucent Techs.*, 610 F. Supp. 2d 342, 363 (D.N.J. 2009) — lack of public dissemination defeats materiality.

[10] Statements that are vague, optimistic, or forward-looking are often considered immaterial "puffery" and not actionable under Rule 10b-5.

85 (2015) (opinion statements are not actionable absent knowledge of falsity); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 419 (5th Cir. 2001) (forward-looking opinions, even if incorrect, are not actionable unless objectively and subjectively false). The SEC has not alleged — and cannot show — that Defendant's statements were known to be false, or that they constituted definitive factual claims likely to mislead a reasonable investor.

Further, contemporaneous internal communications from Virgin Orbit refute the SEC's theory. Immediately after the interview aired, Virgin Orbit's Vice President of Investor Relations, Stephen Zhang, texted Defendant:

> "Reviewed the interview, looked good, no disclosure issues, simply support of the company. And 100% better than anything that would come from an employee-sourced article. I pinged Dan [Hart] and Derrick [General Counsel] too FYI. I'll catch them as soon as they're up." *See* Exh. 9.

This real-time endorsement from the company's own investor relations officer — the person responsible for managing public-facing communications — confirms that Virgin Orbit did not view the interview as misleading or material. The interview was elevated to both the CEO and General Counsel without any request for retraction or correction. This sharply undercuts any inference that the statement was deceptive or required clarification.

The complete absence of disavowal, public correction, or mention in any Form 8-K underscores that Virgin Orbit — the party with the most at stake — did not consider Defendant's statements to require disclosure under Regulation FD or Item 1.01 of Form 8-K. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013); *Basic*, 485 U.S. at 243.

Even more damaging to the SEC's theory, its own expert Dr. Martynova admits that Defendant's interview had no statistically significant effect on Virgin Orbit's stock price. *See* Martynova Report ¶ 33. Without a measurable market impact, the SEC cannot establish

materiality, reliance, or loss causation under *Basic*, *Dura*, and *Stoneridge*.

The SEC's attempt to circumvent the absence of a false public statement by invoking Rule 10b-5(a) and (c) — alleging a so-called "scheme to defraud" — collapses under scrutiny. Courts require that such a scheme be tethered to a deceptive act beyond mere failure to consummate a transaction. *See SEC v. Rio Tinto plc*, 41 F.4th 47, 53–54 (2d Cir. 2022) (scheme liability must involve deceptive conduct independent of misstatements). Here, the SEC points to routine deal mechanics and press attention — not concealment or trickery — and the issuer itself never alleged fraud or sought redress.

Notably, the SEC relies on inferences it has not supported with testimony. Although Defendants issued timely deposition notices to Mr. Hart, Mr. Gingiss, Sir Richard Branson, and Mrs. Caitlin Faubion, none has provided testimony to date. The absence of these witnesses — whose perspectives the SEC has indirectly invoked — underscores that the evidentiary burden has not been met. In any event, even if these individuals had testified, their accounts would not alter the outcome under Rule 56, which requires a genuine dispute of material fact—not speculative narratives or third-party impressions.

Because the SEC has failed to identify a single materially false or misleading public statement — and cannot show that investors relied on any such statement or suffered harm — its Rule 10b-5(b) claim fails as a matter of law.[11]

**B. The SEC Cannot Establish Scienter.**

To prevail on a Rule 10b-5(b) claim, the SEC must prove that the defendant acted with

---

[11] *See SEC v. Jarkesy*, 34 F.4th 446, 461–63 (5th Cir. 2022) (expressing constitutional limits on SEC enforcement discretion); cf. *Loper Bright Enters. v. Raimondo*, 603 U.S. (2024) (overruling Chevron and confirming courts—not agencies—interpret securities statutes). Judicial skepticism of aggressive agency enforcement is now settled law.

scienter — that is, with intent to deceive, manipulate, or defraud. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (scienter requires a strong inference of intent to deceive, manipulate, or defraud). The scienter standard may be satisfied by either intentional misconduct or severe recklessness, but it requires more than negligence or poor judgment. *Id*. at 319–20.

In this case, Defendant has submitted a sworn declaration affirming that he acted in good faith throughout the proposed transaction with Virgin Orbit. *See* Brown Decl. ¶¶ 3–6, 10–15. He believed in the viability of the deal, pursued legitimate financing sources, and engaged in professional communications. He never profited from the transaction, never sold or acquired Virgin Orbit securities, and never misrepresented facts to investors or the public. *See id.* ¶¶ 11–13.

Further, Defendant's subsequent professional engagements reinforce the absence of scienter. In the months following the Virgin Orbit matter, Defendant was vetted by Guggenheim Securities, among others, for a separate aerospace transaction. He was granted confidential access to mission-critical materials — one of which later landed on the Moon — and participated in a private presentation delivered by company executives and Guggenheim's institutional bookrunner. In fact, Guggenheim and the target company continued communications with Defendant through at least May 12, 2023 — well after the Virgin Orbit matter became public — reaffirming that sophisticated stakeholders saw no reason to doubt his credibility or investment viability. These events occurred well after the CNBC interview, confirming that sophisticated institutional stakeholders did not view Defendant as deceptive, untrustworthy, or lacking credibility. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005) ("An inflated purchase

price will not itself constitute or proximately cause the relevant economic loss."); *See* Brown Decl. ¶¶ 16–17.[12]

It defies common sense that a sophisticated institutional firm like Guggenheim would have invited a known fraudster into a confidential aerospace evaluation — let alone grant access to sensitive engineering data — if it believed the SEC's theory of deception had any basis in reality.

Moreover, the SEC alleges that Defendant attempted to "profit from his misconduct" by requesting that Virgin Orbit pay a "break-up" fee after the term sheet was leaked. *See* Complaint ¶¶ 33–34. In reality, break-up fees are a standard feature of commercial private equity, venture capital, and M&A transactions, particularly in distressed scenarios where parties face reputational or transactional risk from failed negotiations. Courts and practitioners widely recognize break-up fees as a routine and commercially reasonable mechanism to compensate parties for reliance, exclusivity, and disclosure burdens. *See, e.g., In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 52–53 (Del. Ch. 2013) (noting break-up fees are "a common feature in merger agreements"); ABA Model Asset Purchase Agreement with Commentary (2d ed. 2010) § 8.2.

The break-up fee proposed by Defendant was neither unusual nor concealed, and in fact, was structured to benefit Virgin Orbit by offering procedural protection and compensation following a public leak of the term sheet by third parties. *See* Exh. 16-19. The proposal was made only after confidential transaction terms were prematurely disclosed, compromising both strategic leverage and the parties' ability to negotiate in good faith. The SEC offers no coherent theory as to how

---

[12] The SEC offers no evidence that Virgin Orbit considered Defendant's statements misleading or material —let alone fraudulent. Its failure to allege breach, demand correction, or issue any public clarification supports the inference that it did not view the conduct at issue as deceptive. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013) ("[A] company's failure to make a corrective disclosure can be evidence that it did not view the alleged misstatement as material.").

this customary and unenforced commercial term — never hidden, never executed, and never financially realized — could plausibly support a claim of fraud, and the SEC's reliance on the break-up fee request is unsupported and legally untenable. Virgin Orbit did not pay it, and the proposal was disclosed. *See Tellabs*, 551 U.S. at 323 (scienter must be cogent and compelling, not speculative) Courts have repeatedly rejected attempts to manufacture fraud based on common M&A negotiation terms. *See SEC v. Life Partners Holdings, Inc.*, 71 F. Supp. 3d 615, 628 (W.D. Tex. 2014). The SEC identifies no evidence that Defendant concealed this fee or misrepresented its terms. It was discussed transparently, rejected by the counterparty, and never paid.[13]

Further, Courts routinely reject securities fraud claims premised on failed negotiations or standard commercial terms, particularly where the conduct reflects industry custom rather than intent to deceive. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 412 (S.D.N.Y. 2020) ("Allegations of mismanagement, breach of contract, or poor judgment do not give rise to securities violations without concrete and specific allegations of deception."); *In re Citigroup, Inc. Sec. Litig.*, 753 F. Supp. 2d 206, 232 (S.D.N.Y. 2010) ("[C]ourts must guard against attempts to recast corporate mismanagement as securities fraud."); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188–89 (2015) (statements of belief or commercial opinion are not actionable unless known to be objectively false and misleading at the time). See Exhs. 16–19 (March 23–24 text exchanges between Defendant and Virgin Orbit CEO Dan Hart, evidencing cooperation, clear deal logistics, and mutual intent to close). These messages show a real-time effort to satisfy regulatory

---

[13] *Tellabs*, 551 U.S. at 323 ("The inference of scienter must be more than merely plausible or reasonable —it must be cogent and at least as compelling as any opposing inference...")

diligence and reflect an honest, constructive negotiation — not deception.

Because the SEC has produced no evidence — direct or circumstantial — of deceptive intent, and because Defendant's conduct is consistent with good faith and professional diligence, the scienter element fails as a matter of law. *See* Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 323 (2007) (scienter requires a cogent and compelling inference of intent to deceive); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (scienter requires intent to defraud or "severe recklessness").

Notably, the SEC's opposition concedes that "[w]hether Brown breached his NDA […] has no impact on the Complaint's well-pled allegations," effectively admitting that its prior emphasis on the NDA was rhetorical rather than substantive. If the NDA is immaterial to the underlying claims, it cannot support any inference of scienter, motive, or deception—particularly where Virgin Orbit never alleged breach or claimed any resulting harm.[14]

Likewise, the SEC asserts that the Virgin Orbit term sheet is relevant merely because it was "provided to Defendants as a result of Defendants' fraudulent conduct." That argument is not only speculative—it is logically circular. The SEC assumes the very fraud it must prove, then retrofits Virgin Orbit's conduct to serve as supposed evidence of it. This reasoning collapses under scrutiny. The undisputed record shows that Virgin Orbit voluntarily issued the term sheet following direct negotiations and internal review by its executive team and legal counsel— conduct wholly inconsistent with having been misled.

---

[14] *n.* The SEC offers no evidence that Virgin Orbit considered Defendant's statements misleading or material. Its failure to allege breach, demand correction, or issue a public clarification supports the inference that it did not view the conduct as deceptive. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013) ("[A] company's failure to make a corrective disclosure can be evidence that it did not view the alleged misstatement as material.").

Indeed, the deliberate issuance of a formal term sheet undermines any inference of deceit or bad faith. The SEC cannot simultaneously rely on Virgin Orbit's voluntary engagement to imply fraud while ignoring that the same engagement affirms the deal's apparent legitimacy. Rule 56 demands evidence, not conjecture. The SEC offers neither.

Break-up fees are a common protective mechanism in distressed M&A and venture transactions, especially where a party faces reputational risk following a leak or failed deal. S*ee In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 52–53 (Del. Ch. 2013). Here, the break-up fee proposal was not hidden, was never paid, and was introduced after a third-party leak compromised the transaction. The SEC offers no theory under which this disclosed and unenforced provision constitutes deception.

The SEC has previously argued that Defendant's CNBC interview and proposal of a break-up fee suggest promotional intent or bad faith. But generalized optimism, industry-standard deal protections, and a lack of financial benefit cannot support scienter under *Tellabs*. Unlike the defendants in *Sethi* and *Reynolds*, who fabricated business relationships and conducted false promotional campaigns for personal gain, Defendant made no objectively false statement, received no profit, and never misled investors or counterparties. Because the SEC has produced no evidence — direct or circumstantial — of deceptive intent, and because Defendant's conduct is consistent with good faith and professional diligence, the scienter element fails as a matter of law.

The SEC's running argument that it is exempt from the PSLRA or need not show reliance or loss misses the point. This motion proceeds under Rule 56, where the burden shifts to the Commission to prove a materially false statement made with scienter. The SEC has failed to do

so. Even under *Kuehnert*, the Commission must identify an actual deceptive act — not just a failed transaction or an unfavorable public perception. Rule 10b-5(b) liability cannot lie where there is no lie, no benefit, and no market harm.[15]

The SEC alleges that a party under legal advice, negotiating openly with a public company's C-suite, secretly planned a sham deal for no profit and no public benefit. Accordingly, the SEC did not and cannot meet its burden to establish scienter, and its claim fails as a matter of law.

**C. The SEC Has Not Established Investor Reliance.**

Reliance is a fundamental element of a Rule 10b-5(b) claim. The SEC must show that an investor or market participant relied on a specific misstatement by a defendant in making investment decisions. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (requiring a causal connection between the defendant's misstatement and the plaintiff's injury). Here, the SEC has not identified a single investor[16], analyst, or institutional participant who relied on any public statement attributed to Defendant. No investor testimony or documentary evidence has been offered to establish that the CNBC interview — or any other statement — played a role in any securities transaction involving Virgin Orbit. *See Undisputed Facts* ¶ 4.

The absence of reliance is especially compelling given that Virgin Orbit issued multiple Form 8-Ks describing the proposed transaction without mentioning Defendant or his interview. *See*

---

[15] *[FN] See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (scienter must be strong, cogent, and compelling); *Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011) (liability under Rule 10b–5(b) requires the "maker" of a materially false statement); *Kuehnert v. Texstar Corp.*, 412 F.2d 700, 704 (5th Cir. 1969) (attempted fraud actionable only where conduct constitutes a "manipulative or deceptive device").

[16] In securities fraud cases, reliance ensures the plaintiff actually viewed or was affected by the alleged misstatement. Here, the SEC has not identified a single investor who read or acted on Defendant's comments.

*Undisputed Facts* ¶¶ 2. These corporate disclosures were the primary market signals regarding the transaction and further undermine the plausibility that Defendant's commentary was material to investment decisions.

The SEC's own admission further undermines any inference of deceptive intent. Specifically, the Commission concedes that Defendants' legal counsel, Edward Christian — a partner at Eversheds Sutherland — was included in communications with Virgin Orbit regarding the proposed transaction. *See* Exh. 12.

In fact, Virgin Orbit's Chief Legal Officer, Derek Boston, sent the draft term sheet directly to Mr. Christian, who then forwarded it to Defendant. This was not a backchannel or informal overture—it was a formal negotiation conducted between Virgin Orbit's senior in-house counsel and Defendants' outside counsel.

The direct involvement of experienced attorneys on both sides confirms that the transaction was pursued in good faith and treated as legitimate by Virgin Orbit itself. It defies logic to suggest that a party intending to deceive would retain one of the world's most respected law firms to structure the deal, coordinate due diligence, and manage closing procedures. This is not the behavior of someone orchestrating a sham—it is the conduct of a serious actor operating transparently and within the bounds of the law.

While the SEC is not required to prove investor reliance in the same way as a private plaintiff, it must still show that the alleged misstatements were material and caused market harm. *See SEC v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 849 (2d Cir. 1968). The SEC has failed to identify a single investor or market participant who acted in reliance on Defendant's statements, nor any evidence of market confusion or economic loss attributable to the statements. If no

investor relied, and the issuer declined to correct, the law does not permit the SEC to stand in as a hypothetical investor aggrieved by optics alone.

Indeed, the SEC failed to identify any investor harmed by Defendant's conduct. This silence speaks volumes. Where no investor was misled, and no harm occurred, enforcement is not justified under Section 10(b).

Courts have consistently held that the presence of legal counsel during the structuring of an investment weighs heavily against an inference of scienter. *See SEC v. Shanahan*, 646 F.3d 536, 545 (8th Cir. 2011) (holding that absence of concealment and presence of counsel are probative of good faith). The SEC cannot plausibly maintain that Defendant intended to deceive the market while simultaneously engaging legal counsel in direct negotiations with the company's own Chief Legal Officer.

Because the SEC has failed to offer any evidence of investor reliance, and because no reasonable jury could infer reliance under these facts, the claim must be dismissed under Rule 56.

**D. The SEC Has Not Demonstrated Investor Loss or Market Harm.**

In addition to materiality and reliance, the SEC must show that the alleged misstatement caused actual harm to investors. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) (requiring "loss causation" — i.e., a causal connection between the misrepresentation and the plaintiff's economic loss).

The SEC's Complaint refers generally to a temporary increase in Virgin Orbit's stock price. However, it provides no evidence linking that fluctuation to Defendant's CNBC interview, nor does it identify any investor who lost money as a result of that increase or any subsequent

decline. *See* Undisputed Facts ¶ 5. Stock prices fluctuate regularly based on a wide array of market forces, and in this case, Virgin Orbit's disclosures, business condition, and ultimate bankruptcy proceedings — as Virgin Orbit was undergoing at the time — all likely contributed to the stock's volatility.

Moreover, the SEC's causation theory is refuted by Virgin Orbit's own Form 8-K filings, which were contemporaneous with the stock price movement but made no mention of Defendant or his proposed investment. For example, the March 20, 2023 Form 8-K publicly disclosed a transaction with YA II PN, Ltd. — a separate party entirely — and did not reference Defendant in any way. *See* Undisputed Facts ¶ 2. Across all four filings between March 16 and March 28, 2023, Virgin Orbit failed to identify Defendant, issue a corrective disclosure, or suggest that his public statement required clarification. *See* Undisputed Facts ¶ 7l; Exh. 5–8. These omissions strongly indicate that the issuer did not consider Defendant's statement to be material or market-moving. As the Supreme Court has made clear, correlation is not causation, and the SEC's theory collapses in the face of the company's own silence. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342–43 (2005); *In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013).

The SEC's own Initial Disclosures confirm that it has not identified a single investor who relied on Defendant's statement, suffered a loss, or intends to testify to any alleged deception. *See* Initial Disclosures at 2–3. The Commission has not disclosed any damages expert or loss causation analysis, and expressly states that it "does not seek damages within the meaning of Fed. R. Civ. P. 26(a)(1)." *Id*. at 4. This admission reinforces the absence of materiality, reliance, and investor harm — and defeats any plausible basis for relief under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), and *Tellabs, Inc. v. Makor*

21

*Issues & Rights, Ltd.*, 551 U.S. 308 (2007). The SEC has had full opportunity to develop its record. Its failure to disclose even a single impacted investor or market participant confirms that no genuine dispute of material fact exists.

Because the SEC has not identified a single investor who suffered a loss attributable to Defendant's conduct — and because the observed market movement coincided with Virgin Orbit's own Form 8-K disclosures, which referenced unrelated transactions and omitted any mention of Defendant — this element of the claim fails as a matter of law. [17]

Figure 1 of the SEC's own expert report (Martynova Report, p. 15) confirms that the only statistically significant upward movement in Virgin Orbit's stock price occurred on March 22, 2023 — the same day the company filed a Form 8-K reversing its operational pause. This 8-K, filed before market open, served as the likely market driver and notably made no mention of Defendant or his proposed investment. Virgin Orbit never issued a corrective disclosure addressing the CNBC interview or the term sheet leak, further undermining any inference of materiality or causation. In contrast, the trading day following Defendant's CNBC interview (March 23) exhibited no statistically significant movement, as confirmed in Paragraph 33 of Dr. Martynova's report. The SEC's own expert data thus undermines its causation theory and supports dismissal. *See* Martynova Report ¶ 33; *In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013).

Virgin Orbit's financial instability and eventual bankruptcy were well-documented and far more likely causes of volatility and the SEC's causation theory is speculative at best, and wholly

---

[17] To the extent the SEC asserts scheme liability under Rule 10b-5(a) and (c), those theories still require materially deceptive conduct and scienter. *See Lorenzo v. SEC*, 139 S. Ct. 1094, 1101 (2019); *SEC v. Rio Tinto plc*, 41 F.4th 47, 49 (2d Cir. 2022). No such evidence exists here, and the record confirms that Defendant did not engage in a deceptive scheme.

unsupported by the record. The Supreme Court made clear in *Dura* that price inflation, without corresponding investor loss, is legally insufficient to sustain a securities fraud claim. Here, there is no evidence of investor loss, no market harm — and thus, no fraud.

**E. The SEC Has Not Shown That Defendant Received Any Gain or Benefit.**

The SEC has not alleged — and cannot prove — that Defendant obtained any financial benefit, personal gain, or ill-gotten advantage.[18]

To support the imposition of civil penalties, fines, bars, or disgorgement, the SEC must show that the defendant derived some personal gain — whether monetary, reputational, or otherwise — from the alleged misconduct. *See Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) ("Disgorgement must be tied to a wrongdoer's net profits from unlawful conduct."). Without such a showing, remedial sanctions cannot be justified under law or equity.[19]

Here, again, the SEC has neither alleged nor produced any evidence that Defendant received compensation, equity, shares, fees, or any other form of benefit related to the Virgin Orbit transaction. Defendant never acquired Virgin Orbit securities, never received a finder's fee, and never profited in any form from the CNBC interview or the proposed investment. *See* Undisputed Facts ¶ 3; Brown Decl. ¶¶ 11–13.

This complete absence of financial or reputational gain not only defeats any claim for monetary remedies — it also undercuts the SEC's theory of scienter. The SEC has argued that even an attempt to secure a benefit may support scienter, citing cases like *Kuehnert*. But those

---

[18] While trading is not a formal requirement under Rule 10b-5, the absence of any stock acquisition, sale, profit, or benefit by Defendant undercuts both scienter and harm. *See Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020) (penalties must be tied to personal gain).

[19] Courts typically require a showing of personal gain or investor harm to justify civil penalties. The SEC has shown neither here.

cases involve actual deception or manipulation. Here, the record reflects no trading, no compensation, no upside. The SEC's theory conflates ambition with misconduct and optics with fraud. Without a materially false statement, no Rule 10b-5 liability can lie. Courts have repeatedly held that where a defendant receives no benefit from the alleged misconduct, the inference of deceptive intent is significantly weakened. *See SEC v. Shanahan*, 646 F.3d 536, 545 (8th Cir. 2011) ("The absence of personal financial gain weighs against a finding of scienter.").

Because the SEC has failed to identify any benefit, profit, or advantage obtained by Defendant, it cannot justify the imposition of penalties, fines, injunctions, or officer-and-director bars, nor can it sustain a claim for securities fraud under Rule 10b-5. The claim lacks an essential element and fails as a matter of law.

**F. The SEC's Expert Report Does Not Create a Genuine Dispute.**

The SEC's expert, Dr. Marina Martynova, offers a statistical event study in an effort to show that Virgin Orbit's stock price rose following public reports of the proposed transaction and declined after the deal collapsed. However, the report fails to establish the essential legal elements of materiality, reliance, or loss causation.

First, Dr. Martynova admits that Defendant's only public statement — his March 23 CNBC interview — had no statistically significant impact on Virgin Orbit's stock price. *See* Martynova Report ¶ 33. Instead, her model links stock movement to third-party media leaks, not to any statement made by Defendant himself. This admission severs any link between Defendant's conduct and market harm under *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), and *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014).

Second, the expert identifies no investor who relied on Defendant's statement. There is no

24

declaration, deposition, or document from any investor stating that they saw, trusted, or traded based on anything Defendant said. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 159 (2008) (reliance cannot be presumed from correlation). Courts have held that price movement alone is not a substitute for proof of reliance or harm. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342–43 (2005).

Third, Dr. Martynova's "artificial inflation" model is premised entirely on the assumption that Defendant made a false statement. But this assumption is unsupported. Defendant's sworn declaration affirms that he acted in good faith, pursued credible financing, and never intended to deceive the public. *See* Brown Decl. ¶¶ 3–6, 10–15. There is no evidence of trading, personal gain, or manipulation. Her model is circular: it assumes Defendant's guilt without proof, which is legally insufficient. Without a foundation of scienter, the model cannot stand. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (scienter must be cogent and compelling, not speculative).

Fourth, the stock price movement she identifies correlates with disclosures made by Virgin Orbit and third-party media, not Defendant. As discussed in Undisputed Fact 2 and Argument D *See* Exh. 5–8, Virgin Orbit issued multiple Form 8-Ks confirming the existence of a proposed investment without naming or referencing Defendant. *See* Exh. 5–8. These were the primary market drivers — not anything Defendant said or did. Virgin Orbit's own decision not to identify or clarify Defendant's role undermines any argument that the market was relying on him.

Fifth, Dr. Martynova never interviewed a single investor or referenced any internal Virgin Orbit communication attributing the market movement to Defendant. Her analysis relies on after-the-fact modeling, not legal or evidentiary proof. As the Supreme Court has emphasized,

25

correlation does not establish causation, particularly in the absence of evidence linking the conduct to specific investor behavior. *See Dura*, 544 U.S. at 343.

Accordingly, Dr. Martynova's report — though presented in academic form — fails to create a genuine dispute of material fact. Her conclusions rely on speculative assumptions, lack real-world investor corroboration, and fall short of the legal standards for establishing materiality, reliance, or loss causation.

As the Supreme Court emphasized in *Tellabs*, a securities fraud claim must be supported by a "cogent and compelling" inference of intent — a threshold the SEC cannot meet here. Nothing in Dr. Martynova's analysis substantiates a fraudulent motive, investor deception, or any link between Defendant's statements and economic harm.

The SEC cannot invoke the fraud-on-the-market presumption because it has not shown that the market was misled, or that Defendant's statement had any price impact. *See Basic*, 485 U.S. at 243–47; *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 269 (2014) (price impact is required to invoke Basic presumption).

The expert report, devoid of evidentiary support and grounded in inference rather than fact, cannot create a triable issue or salvage the SEC's claims at summary judgment. An expert cannot substitute conjecture for evidence and her assumptions cannot cure the SEC's evidentiary void.

**G. Virgin Orbit's Disclosures And Behavior Undermine the SEC's Theory.**

The SEC points to no other disclosure obligation or filing. These four Form 8-Ks are the full contemporaneous record of Virgin Orbit's material public statements during the relevant

period.[20] The SEC's theory of fraud is thereby directly contradicted by Virgin Orbit's own public filings, as discussed above in Argument A and supported by Undisputed Facts ¶¶ 1–2, Virgin Orbit's 8-K disclosures affirmatively undermine any inference of materiality. Between March 16 and March 28, 2023, Virgin Orbit filed four Form 8-Ks describing operational pauses, financing efforts, and a proposed transaction with a different investor — YA II PN, Ltd. *See* Virgin Orbit Form 8-Ks dated Mar. 16, 20, 22, and 28, 2023; Exh. 5–8. Notably, none of these filings referenced Defendant, his CNBC interview, or any need for clarification or correction.

Even the SEC concedes that Virgin Orbit's March 22, 2023 Form 8-K, which reversed the company's previously announced operational pause and stated that it would "immediately resume operations to prepare for its next mission," made no mention of Defendant or the proposed transaction. This further severs any causal link between Defendant's conduct and the market reaction. *See* Compl. ¶ 26. The SEC further alleges that it was only hours later that Reuters reported a potential $200 million deal with Defendant's firm, citing a leaked term sheet "seen by Reuters." *Id.*

This admission is fatal to the SEC's theory of materiality and causation. Virgin Orbit had a clear opportunity — amid an operational reversal and alleged market movement — to clarify or correct any statement made by Defendant on multiple occasions. Yet it did not. Instead, the disclosure that followed came not from Defendant, nor from Virgin Orbit, but from a third-party media leak, further severing the causal chain.

Courts have repeatedly held that where an issuer does not issue a corrective disclosure, this

---

[20] The March 16 8-K announced an operational pause and workforce reduction; March 20 updated the Board structure and layoffs; March 22 reversed the pause following funding; March 28 disclosed company restructuring and cash burn. None referenced Defendant.

absence weighs strongly against a finding of materiality or scienter. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013) (a company's "failure to make a corrective disclosure can be evidence that it did not view the alleged misstatement as material"). The SEC's own allegations confirm that Virgin Orbit chose silence, even while releasing multiple 8-Ks during the relevant period. This decisively undercuts the notion that Defendant's statements were misleading, material, or relied upon by investors.

If Defendant's statements were materially misleading, Virgin Orbit — the only party in a position to know — had every incentive, and arguably a legal obligation under Regulation FD and Item 1.01 of Form 8-K, to correct or clarify the record.[21] Its complete silence across four filings speaks decisively: the company did not view Defendant's involvement or public comments as material, misleading, or actionable.

This omission is not a procedural footnote — it is dispositive. Courts have consistently held that an issuer's failure to correct an allegedly false statement weighs against a finding of materiality or scienter. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013).

Virgin Orbit's disclosures — and omissions — support four critical legal conclusions:

1. **Issuer Silence Across Four 8-Ks Is Legal Evidence of Non-Materiality.**

Between March 16 and March 28, 2023, Virgin Orbit filed four Form 8-Ks disclosing operational and financing developments, including a March 20 filing publicly confirming

---

[21] "Under Regulation FD, issuers must disclose material nonpublic information publicly when it is selectively shared. Virgin Orbit's failure to issue a Form 8-K clarifying Defendant's interview — despite acknowledging it internally — is strong evidence that it was not viewed as material." Regulation FD (Fair Disclosure), codified at 17 C.F.R. § 243.100 et seq., requires public companies to disclose material nonpublic information to the public simultaneously when shared with certain parties. Item 1.01 of Form 8-K, 17 C.F.R. § 229.1.01(a), requires disclosure of entry into any material definitive agreement not made in the ordinary course of business.

its intent to seek funding. Not one of these filings mentioned Defendant, his CNBC interview, or any purported misstatement — despite contemporaneous awareness by Virgin Orbit's legal and investor relations teams.

This silence speaks volumes. When a company files no corrective disclosure, courts consistently view it as evidence that the alleged statement was not material. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013) ("A company's failure to make a corrective disclosure can be evidence that it did not view the alleged misstatement as material."). Nor did Virgin Orbit have a disclosure obligation under Regulation FD or Item 1.01 of Form 8-K. The absence of corrective action from the issuer — who was best positioned to assess impact — confirms the statements were immaterial as a matter of law.

2. **No Reasonable Reliance Exists When the Issuer Declined to Clarify or Correct.**

Reliance requires more than speculation. Under *Basic Inc. v. Levinson,* 485 U.S. 224 (1988), and *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148 (2008), the SEC must show that investors actually relied — directly or via the fraud-on-the-market theory — on a materially misleading statement.

But when the issuer itself issues no correction, clarification, or rebuttal — across four, or any, Form 8-Ks — no reasonable investor can be said to have relied. Defendant made no earnings projection, offered no pricing data, and disclosed no confidential facts. The market had no reason to act on his statements, especially when Virgin Orbit's filings spoke far more definitively about its actual funding efforts.

3. **The Break-Up Fee Was Industry Standard and Non-Deceptive.**

29

The SEC fixates on Defendant's proposal for a break-up fee, yet offers no evidence that this proposal was hidden, deceptive, or acted upon. Break-up fees are routine in private equity and venture capital transactions — particularly in distressed M&A scenarios — serving as protective mechanisms for both parties.

Here, the proposed fee was advanced only after Virgin Orbit's confidentiality was breached by a third-party leak, compromising Defendant's position and creating reputational risk. The proposal was never executed or paid. Virgin Orbit did not reference the break-up fee in any disclosure, nor did it treat the concept as improper. The absence of concealment, financial impact, or enforcement renders the SEC's claim of deception meritless.

4. **Virgin Orbit's Cautionary Disclosures Defeat Any Claim of Investor Reliance or Harm.**

Every Form 8-K filed by Virgin Orbit during the relevant period included robust forward-looking disclaimers. These warned investors that funding discussions were preliminary, subject to uncertainty, and not guaranteed. Such disclaimers legally undercut any inference that the market could have relied on speculative statements — particularly those not made by the company itself.

Courts recognize that loss causation cannot be premised on forward-looking statements when disclaimers are present and the market is on notice. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). Any price movement attributed to the Defendant must be viewed in context: a distressed company, speculative funding rumors, and explicit warnings about volatility. The SEC has offered no admissible evidence tying

Defendant's conduct to any sustained investor loss.

In summary as to any potential investor reliance, Virgin Orbit's disclosures — and their strategic silence — directly undermine the SEC's allegations of deception, reliance, and investor harm. The issuer's inaction is not neutral; it is dispositive and fatally undermine the SEC's case.

**H. The SEC's Own Pleadings Undermine Its Case.**

In its opposition to Defendants' motion to dismiss [Dkt. 16], the SEC reaffirmed its reliance on speculative allegations — including an internal screenshot, generalized statements of optimism, and a media interview — while offering no evidence of investor reliance, financial loss, or market disruption. Virgin Orbit never filed a corrective disclosure, never disavowed Defendant's statements, and never pursued legal action. These omissions speak louder than the SEC's characterizations. What remains is a business negotiation that collapsed — not a securities fraud. Even the SEC's own Complaint (Compl. ¶¶ 19–35) and opposition brief confirm that this case concerns optics, not violations. Summary judgment is not merely appropriate — it is necessary to prevent expansion of Rule 10b-5 beyond its statutory limits.

## V. CONCLUSION AND PRAYER FOR RELIEF — DISMISSAL WITH PREJUDICE AND ALL OTHER JUST RELIEF

For the foregoing reasons, Defendants respectfully request that the Court grant this Motion for Summary Judgment and dismiss the Complaint in its entirety, with prejudice. Although the SEC alleges violations under Rule 10b-5 and Section 10(b), it has failed to present admissible evidence establishing the essential elements of its claims. No genuine dispute of material fact exists that would warrant a trial.

The SEC has failed to produce evidence showing:

31

- Any public loss;

- Any materially false statement made with scienter;

- Any investor who relied on the alleged misstatement;

- Any causal connection between Defendant's conduct and market harm; or

- Any financial gain by Defendants.

Even the SEC's own expert concedes that Defendant's only public statement — the CNBC interview — had no statistically significant effect on Virgin Orbit's stock price. This admission confirms the absence of materiality, reliance, and loss causation. It also aligns with the principle articulated in *In re Netflix*, where a company's silence in the face of an alleged misstatement weighs against a finding of materiality. *See In re Netflix, Inc. Sec. Litig.*, 926 F. Supp. 2d 945, 963 (N.D. Cal. 2013).

This case presents no triable issues of fact. The record is closed, the law is clear, and summary judgment is not only appropriate — it is required under binding precedent. The SEC's theory collapses not because the facts are contested—but because the facts never supported its case to begin with. Rule 56 requires more than suspicion. It demands proof. Here, there is none.[22]

The SEC may argue that promotional conduct or an "attempted fraud" supports liability, even without investor loss or financial gain. *See Kuehnert v. Texstar Corp.*, 412 F.2d 700, 704 (5th Cir. 1969). But Rule 10b-5(b) still requires a materially false public statement and a basis to infer deceptive intent. *See Janus Capital Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142

---

[22] If the SEC fails to establish even one of these elements — as the record here makes clear — the claim cannot survive and must be dismissed as a matter of law. *See Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008) ("Each of these elements must be satisfied."); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (summary judgment appropriate where the non-moving party fails to establish an essential element).

(2011) (liability attaches only to the person who actually makes a materially false statement); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (scienter must be a strong, cogent, and compelling inference); *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta, Inc.*, 552 U.S. 148, 157 (2008) ("Each of these elements must be satisfied.").

Public optimism, deal ambition, and routine legal proposals like break-up fees cannot fill the evidentiary void Rule 56 requires the SEC to overcome. *See City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 412 (S.D.N.Y. 2020) ("Allegations of mismanagement, breach of contract, or poor judgment do not give rise to securities violations without concrete and specific allegations of deception."); *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 188–89 (2015) (statements of belief or commercial opinion are not actionable unless known to be objectively false and misleading at the time).

The SEC's theory cannot survive summary judgment because it fails where it matters most — on the elements Congress and the Supreme Court have repeatedly affirmed as dispositive: materiality, scienter, reliance, and loss. Under the Fifth Circuit's standards and the Supreme Court's guidance in *Stoneridge*, *Tellabs*, and *Dura*, dismissal is not only supported — it is the outcome required when the record lacks evidence of materiality, scienter, reliance, and loss.

The SEC has not shown who was misled, what was false, when it mattered, where it was disclosed, or how it harmed anyone. Rule 10b-5 is a fraud statute, not a frustration statute. The record is closed. No victim has been identified. No material misstatement was made. And no loss occurred. The Court should now enter judgment and bring this matter to a close.

Defendants further pray for such other and further relief as the Court deems just and proper.

Dated: April 23, 2025                Respectfully submitted,

                                      /s/ Matthew R. Brown
                                      Matthew R. Brown
                                      590 Farrington Highway, #524-504
                                      Kapolei, Hawaii 96707
                                      (808) 755-0622
                                      legal@matthewbrowncompanies.com
                                      *Pro se Litigant for the Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2025, the foregoing document was filed electronically via the Court's CM/ECF filing system, which will send a notice of electronic filing to all CM/ECF participants. I further certify that a true and correct copy of the foregoing document and the notice of electronic filing were served via electronic mail, whether participants or non-participants in Electronic Case Filing:

Patrick Disbennett (disbennettpa@sec.gov)
*Attorney for Plaintiff*



/s/ Matthew R. Brown
Matthew R. Brown
590 Farrington Highway, #524-504
Kapolei, Hawaii 96707
(808) 755-0622
legal@matthewbrowncompanies.com
*Pro se Litigant for the Defendants*